**William M. Fitzgerald, Esq.**
**LAW OFFICE OF WILLIAM M. FITZGERALD**
1st Floor, Macaranas Building
P.O. Box 909
Saipan, MP 96950
Telephone (670) 234-7241
Facsimile (670) 234-7530

**Bruce Berline, Esq.**
**Law Office of Bruce Berline**
1st Floor, Macaranas Building
P.O. Box 5682 CHRB
Garapan, Saipan, MP 96950
Telephone: (670) 233-3663
Facsimile: (670) 233-5262

Attorneys for Plaintiffs

FILED
Clerk
District Court

APR - 4 2006

For The Northern Mariana Islands
By_____
(Deputy Clerk)

IN THE UNITED STATES DISTRICT COURT

FOR THE

COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| JOHN BRADY BARRINEAU, | CV NO. 05-0028 |
| Plaintiff, | |
| v. | [proposed] FIRST AMENDED COMPLAINT<br>DEMAND FOR JURY TRIAL |
| PROMARINE TECHNOLOGY, CABRAS MARINE CORPORATION, KENNETH COLLARD | |
| Defendants. | |

**ACTION UNDER SPECIAL RULE FOR SEAMEN
TO SUE WITHOUT SECURITY AND PREPAYMENT
OF FEES, 28 U.S.C. § 1916**

Plaintiff John Brady Barrineau, by and through his counsel of record, William Fitzgerald and Bruce Berline, allege as follows:

EXHIBIT
A

**PARTIES**

1. Plaintiff John Brady Barrineau ("Plaintiff Barrineau") is a citizen and domiciliary of the Commonwealth of the Northern Mariana Islands ("CNMI") and presently resides on Saipan.

2. Plaintiff Barrineau is a seaman pursuing his remedies under Section 33 of the Merchant's Seaman's Act of June 5, 1920, and all amendments thereto, and all other applicable maritime and tort law in the premises. Alternatively, Plaintiff was engaged in the traditional work of a maritime worker, the type of which is covered under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. §901 et seq., ("LHWCA").

3. Defendant PRO MARINE TECHNOLOGY ("PMT") is a corporation organized pursuant to the laws of Guam which at all times relevant to this complaint transacted business within the CNMI.

4. Defendant CABRAS MARINE CORPORATION ("CMC") is a corporation organized pursuant to the laws of Guam which at all times relevant to this complaint transacted business within the CNMI.

5. Defendant KENNETH COLLARD ("Mr. Collard") is a citizen of Guam and is the President of PMT.

6. Defendant CHIE N. COLLARD ("Mrs. Collard) is a citizen of Guam and is the Treasurer and/or Secretary of PMT.

7. The M/V Cajun is, and was at all times relevant to this complaint, a United States flagged ocean going vessel used for the transport of people, equipment and/or goods by water owned by defendant CMC and, based upon information and belief, is presently operating out of the port of Saipan in this district.

8. Defendants JOHN DOES 1-25 and ROE ENTITIES 1-25 are sued herein under fictitious names for the reason that, despite diligent and good faith efforts to obtain information, their true names, identities, and capacities, are presently unknown to Plaintiff, except that they include, but are not limited to:

(a) vessel owners, manufacturers, servicers, service facilities, designers, operators, lessees or charterers, and/or the agents, servants, employees, employers, representatives, co-venturers, associates, vendors, suppliers, manufacturers, lessors, subcontractors or contractors of the named Defendants.

## JURISDICTION/JURY TRIAL

9. This court has personal jurisdiction over Plaintiff.

10. This court has personal jurisdiction over Defendants PMT, CMC, Mr. Collard and Mrs. Collard.

11. This court has *in rem* jurisdiction over the Defendant M/V "CAJUN," simultaneously with all engines, tackle, freight, equipment, and other stored items and appurtenances.

12. This court has original subject matter jurisdiction of Plaintiff's admiralty and maritime claims pursuant to the *Jones Act*, 46 U.S.C. §688, the LHWCA, and general maritime law, and pursuant to 28 U.S.C. §1333 and 28 U.S.C. §1331, saving to Plaintiff all other remedies to which they are otherwise entitled.

13. This court has supplemental, pendent and/or ancillary jurisdiction over Plaintiff's remaining tort and related claims.

14. The factual and jurisdictional grounds upon which Plaintiff's claims are premised entitle Plaintiff to a trial by a CNMI jury except those designated as coming within the meaning of Rule 9(h) of the *Federal Rules of Civil Procedure*, and Plaintiff hereby demands a trial by jury in this matter.

## FACTS

15. This matter contains admiralty claims along with general maritime claims.

16. Plaintiff Barrineau at all relevant times described in this Complaint, was hired and employed by Defendant PMT as a commercial deep-sea diver. As a commercial deep-sea diver, Plaintiff Barrineau is constantly exposed to the perils of the ocean.

17. Defendant PMT was at all times relevant to this complaint, in business as a vessel owner, and/or operator of vessels, and was the owner, lessee, lessor, charterer, subcharterer, operator, and/or owner *pro hac vice* of the M/V Cajun - a U.S. flagged vessel built to transport goods and passengers on navigable waters.

18. Defendant PMT was contracted to clean the hull of the M/V Cpl. Louis J. Hauge, Jr. (hereinafter, "M/V Hauge") while it was moored in Apra Harbor, Guam.

19. Defendant PMT used the M/V Cajun to complete the M/V Hauge hull cleaning. The M/V Cajun's mission was to transport Plaintiff Barrineau, as well as others, to and from the M/V Hauge each day while the maintenance was completed.

20. The M/V Cajun also served as a dive station for Plaintiff Barrineau, as well as others. As such, the M/V Cajun held all of the equipment necessary to complete the underwater mission of scrubbing the hull of the M/V Hauge, including the air supply used for Plaintiff Barrineau's dive. As one of the commercial deep sea diver tasked to perform the maintenance on the Hauge, Plaintiff Barrineau contributed to the M/V Cajun's mission. Plaintiff Barrineau duties also contributed to the M/V Hauge's function.

21. Plaintiff Barrineau's air initiated from the dive compressor aboard the M/V Cajun and was delivered to Plaintiff Barrineau via a flexible umbilical assembly.

22. On or about May 22, 2005, Plaintiff Barrineau was taken by the M/V Cajun to the M/V Hauge. Plaintiff Barrineau while aboard the M/V Cajun assisted with mooring lines and other on board duties. Once the M/V Cajun was moored to the M/V Hauge, Plaintiff Barrineau donned his deep sea diving gear, entered the water, submerged to a depth of about 35 to 40 feet, and began scrubbing the hull of the M/V Hauge with a hydraulic scrubber.

23. While in the midst of scrubbing the hull, Plaintiff Barrineau's air supply was, suddenly and without any warning, turned off completely by Defendant Kenneth Collard and/or other people aboard the M/V Cajun.

24. Defendant Kenneth Collard turned off a valve which directly controlled the flow of Plaintiff's air supply which he was using while underwater.

25. Plaintiff Barrineau began sinking below the hull of the M/V Hauge.

26. Plaintiff Barrineau managed to free himself from his equipment, including, without limitation, his weight belt, diving apparatus, and the hydraulic scrubber and began a rapid ascent. During the ascent, Plaintiff Barrineau lost consciousness and hit his head on the hull of the ship, causing it to bleed.

27. As a result of his air supply being suddenly and completely shut off, Plaintiff Barrineau has sustained permanent and painful injuries of body and mind. Moreover, as a result of these injuries, Plaintiff Barrineau presently and in the future will continue to suffer physical pain and mental anguish and will continue to incur medical, hospital and other related expenses. Additionally, Plaintiff Barrineau has been and is now and will be in the future prevented from participating in and enjoying the normal pleasures of life to which Plaintiff was formerly accustomed. Accordingly, Plaintiff has sustained and incurred damages in an amount according to proof at trial.

28. At the time of Plaintiff Barrineau's injuries, the M/V Cajun was in navigation, and upon navigable waters.

29. At the time of Plaintiff Barrineau's injuries, Plaintiff Barrineau was acting within the course and scope of his employment and performing his required duties.

30. At the time of Plaintiff Barrineau's injuries, he was engaged in the traditional work of a seaman, and/or was doing the M/V Cajun's work and enjoyed the status of a seaman as the term is used in the Jones Act 46 U.S.C. §688.

31. In the alternative, Plaintiff was engaged in the traditional work of a maritime worker, the type of which is covered under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. §901 et seq., ("LHWCA").

32. PMT failed to secure payment of compensation as mandated by the LHWCA and thus PMT, along with its president, secretary and treasurer are jointly, severally, and personally liable for Plaintiff's damages in an amount according to proof at trial.

## COUNT 1: JONES ACT NEGLIGENCE

33. Plaintiff repeats and realleges, and incorporate herein by reference, each and every allegation contained in the preceding paragraphs.

34. Plaintiff was, for all times relevant to this complaint, a seaman as that term is used in the Jones Act. Plaintiff's injuries were caused by the negligence of defendant PMT, its agents, servants, officers and/or employees.

35. Defendant PMT, its agents, servants, officers and/or employees owed certain duties of care to Plaintiff Barrineau, such duties included, without limitation, the duty to provide Plaintiff with a reasonably safe place in which to work, the duty to provide reasonably safe conditions in which to work, and the duty to provide reasonably safe equipment with which to work.

36. Defendant PMT owed a further duty to guard against risks and dangers of which it knew or by the exercise of due care should have known about including without limitation the risk of turning off an open air valve, and/or the risk of turning off a diver's air supply.

37. Defendant PMT owed a further duty of care to Plaintiff to provide Plaintiff with reasonably adequate and competent medical attention.

38. Defendant PMT owed a further duty of care to Plaintiff Barrineau to inspect the premises where Plaintiff Barrineau was working, to inspect the equipment used by Plaintiff Barrineau and to take

reasonable precautions to protect Plaintiff from possible danger.

39. Defendant PMT owed a further duty of care to Plaintiff to not instruct its employees, including Plaintiff, to perform tasks by using a number of employees or a procedure or method with which it knew or in the exercise of reasonable care should have known, would result in injuries.

40. Defendant PMT owed a duty to Plaintiff Barrineau to comply with industry customs and safety rules, regulations or statutes.

41. Defendant PMT breached such above duties owed to Plaintiff.

42. Furthermore, Defendant PMT, its agents servants officers and/or employees failed to duly warn and/or notify Plaintiff of dangerous condition of and aboard the Vessel.

43. Defendant PMT, its agents servants officers and/or employees failed to use reasonable judgment in hiring and employing inspectors, surveyors, and other people and/or entities who inspected, tested, looked at, reported on, or was responsible in any other way for the safety and seaworthiness of the equipment used for the diving operation and the M/V Cajun itself.

44. Moreover, Plaintiff's air supply and/or the controls for his air supply was within the exclusive control of Defendant PMT, including their agents, servants, officers and/or other employees and the events leading up to and causing Plaintiff Barrineau's injuries are such as in the ordinary course of things would not occur if the one having exclusive control uses proper care, and thus the doctrine of *Res Ipsa Loquitur* is applicable and should be applied in this case.

45 Further, at the time Plaintiff was injured, there existed certain rules, regulations, codes and/or statutes which were designed to secure and promote the safety of Plaintiff and others. Based on information and belief, Defendant PMT was in violation of such rules, regulations, codes and/or statutes at the time Plaintiff Barrineau was injured and thus Defendant PMT is strictly liable for such injuries pursuant to the doctrine of negligence per se as applied under the Jones Act.

46. The negligence of Defendant PMT, their agents, servants, officers and/or employees, resulted in, or at the very least, played the slightest part in bringing about, Plaintiff Barrineau's injuries, including his physical, mental, economic and non-economic damages.

## COUNT II: UNSEAWORTHINESS

47. Plaintiff Barrineau repeats and realleges, and incorporates herein by reference, each and every allegation contained in the preceding paragraphs.

48. The injuries and damages which were sustained by Plaintiff was also caused by the unseaworthy condition of the M/V Cajun as the M/V Cajun or part of the M/V Cajun, its gear, equipment and/or crew were not reasonably fit for their intended purposes.

49. The unseaworthy condition of the M/V Cajun brought about or actually caused Plaintiff Barrineau's injuries and Defendant CMC and/or PMT, therefore, is liable for those injuries and damages.

### COUNT III: MAINTENANCE AND CURE/WAGES
(In Admiralty)

50. This is an admiralty or maritime claim within the meaning of Rule 9(h), Federal Rules of Civil Procedure. Plaintiff claims maintenance and cure and wages in such amount as may be determined by the court on this cause of action.

51. Plaintiff repeat and reallege, and incorporate herein by reference, each and every allegation contained in the preceding paragraphs.

52. Plaintiff's injuries and damages occurred while he was acting within the course and scope of his service as a seamen.

53. As a result of the previously described events, Plaintiff is entitled to maintenance and cure until such time as he achieves maximum medical cure.

54. Defendant PMT and/or defendant CMC has failed to pay any maintenance or cure to Plaintiff.

55. Defendant PMT and/or defendant CMC's failure to pay Plaintiff Barrineau maintenance and cure is willful and arbitrary and thus Plaintiff Barrineau is entitled to attorney's fees.

56. As a further result of the previously described events, Plaintiff is entitled to receipt of his unpaid wages.

### COUNT IV: NEGLIGENCE

57. Plaintiff repeats and realleges, and incorporate herein by reference, each and every allegation contained in the preceding paragraphs.

58. Without waiving Plaintiff's above causes of action against Defendants, Plaintiff alleges in the alternative that Defendants PMT, CMC, Mr. Collard and/or Mrs. Collard owed Plaintiff certain duties of care.

59. Defendants breached such duties owed to Plaintiff.

60. Plaintiff Barrineau has sustained permanent and painful injuries of body and mind which were proximately caused by Defendants' breach of the duties owed Plaintiff. Moreover, as a result of these injuries, Plaintiff Barrineau presently and in the future will continue to suffer physical pain and mental anguish and will continue to incur medical, hospital and related expenses. Additionally, Plaintiff Barrineau has been and is now and will be in the future prevented from participating in and enjoying the normal pleasures of life to which Plaintiff was formerly accustomed. Accordingly, Plaintiff has sustained and incurred damages in an amount according to proof at trial.

61. Defendants actions and negligence was outrageous, callous, reprehensible, malicious and/or in reckless disregard of the safety and well being of Plaintiff and thus entitles Plaintiff to punitive damages in an amount to be determined at trial.

### COUNT V: NEGLIGENCE PER SE

62. Plaintiff repeats and realleges, and incorporate herein by reference, each and every allegation contained in the preceding paragraphs.

63. Without waiving Plaintiff's above causes of action against Defendants, Plaintiff alleges, in the alternative, and upon on information and belief, that Defendants PMT, CMC, Mr. Collard and/or Mrs. Collard violated certain rules, regulations, codes and/or statutes intended to protect the safety, health and/or general welfare of a certain class of people: a class of which Plaintiff is a member.

64. Plaintiff suffered the type and kind of harm which the above various rules, regulations, codes and/or statutes were and are intended to prevent.

65. Plaintiff's injuries and damages and detriment, described in the preceding paragraphs, were proximately caused by the violation of such various rules, regulations, codes and/or statutes of the CNMI and the negligence described in the preceding paragraphs, all of which are attributable to Defendants, and their agents, officers, and representatives, for which Defendants are liable to Plaintiff.

66. Defendants actions and negligence was outrageous, callous, reprehensible, malicious and/or in reckless disregard of the safety and well being of Plaintiff and thus entitles Plaintiff to punitive damages in an amount to be determined at trial.

### COUNT VI: NEGLIGENCE - RES IPSA LOQUITUR

67. Plaintiff repeats and realleges, and incorporate herein by reference, each and every allegation contained in the preceding paragraphs.

68.　Without waiving Plaintiff's above causes of action against Defendants, Plaintiff alleges, in the alternative, that Plaintiff's air supply and/or the controls for his air supply was within the exclusive control of Defendant PMT, CMC, Mr. Collard and/or Mrs. Collard, including their agents, servants, officer and or other employees and the events leading up to and causing Plaintiff Barrineau's injuries are such as in the ordinary course of things would not occur if the one having exclusive control uses proper care, and thus the doctrine of *Res Ipsa Loquitur* is applicable and should be applied in this case.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff requests:

A.　Issuance of a judgment, jointly and severally against Defendants PMT, Mr. Collard, Mrs. Collard and CMC, as follows:

1. General Damages and Special Damages in an amount to be determined at trial;
2. Punitive Damages in an amount to be determined at trial;
3. Costs of suit;
4. Pre-judgment and post-judgment interest;
5. Attorney's fee's and,
6. Such other and further relief as is deemed lawful, just, or equitable under the circumstances.

Dated: Saipan, CNMI, April ___, 2005.

_____
Bruce Berline
William Fitzgerald
P.O. Box 5682 CHRB
Saipan, MP 96950
Attorneys for Plaintiff John Brady Barrineau