1   CARLSMITH BALL LLP

2   DAVID LEDGER
    Carlsmith Ball LLP Building
3   Capitol Hill
    Post Office Box 5241
4   Saipan, MP 96950-5241
    Tel No. 670.322.3455
5
    Attorneys for Defendant
6   Cabras Marine Corporation

7

8

9                   IN THE UNITED STATES DISTRICT COURT

10                              FOR THE

11          COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

12

13   JOHN BRADY BARRINEAU,              CIVIL ACTION NO. CV05-0028

14              Plaintiff,

15        vs.                           **MOTION TO STRIKE DR. PAMINA J.
                                        HOFER AS AN EXPERT WITNESS;**
16   PROMARINE TECHNOLOGY and           **MEMORANDUM IN SUPPORT
     CABRAS MARINE CORPORATION,         THEREOF; DECLARATION OF**
17                                      **DAVID LEDGER; EXHIBIT A - H;**
                Defendants.             **CERTIFICATE OF SERVICE**
18

19

20        Defendant Cabras Marine Corporation ("Cabras") hereby moves this Court, under

21   Federal Rules of Civil Procedure, Rules 26(a)(2) and 37(c)(1), to strike Plaintiff's expert witness

22   Dr. Pamina J. Hofer ("Dr. Hofer").  Dr. Hofer must not be permitted to testify as an expert

23   witness for the Plaintiff because Plaintiff failed to obtain and/or disclose Dr. Hofer's expert

24   report(s) as required under Rule 26(a)(2)(B).

25        The reasons for the failed disclosure are unknown; either Dr. Hofer failed to complete

26   written reports of the results of multiple examinations of Plaintiff and turn them over to

27   Plaintiff's counsel, or Plaintiff's counsel has them and will not disclose them. Whatever the

28

4824-5481-3953.1.052540-00009

1   reason is for non-disclosure does change the fact that Cabras is prejudiced and is entitled to

2   appropriate relief, including an Order striking Hofer as an expert for plaintiff and barring her

3   from testifying at trial.

4       In the alternative, Cabras requests that this Court compel immediate production of Dr.

5   Hofer's written reports of her examinations of Plaintiff and enter an order requiring Plaintiff to

6   make Dr. Hofer immediately available for deposition in Guam.  The Court should note that

7   despite substantial efforts, Cabras has been unable to locate and serve Dr. Hofer with a subpoena

8   to appear for a records deposition to hand over her records.  The Court should also note that

9   Cabras' requests to Plaintiff's counsel to assist in arranging such a deposition have been ignored.

10      Complicating matters considerably and exacerbating the prejudice to Cabras is that the

11  lack of disclosures have prejudiced Defendant's IMEs, long-since scheduled and recently

12  completed on November 6, 7, and 8th.  In particular, Cabras' IME doctors have been deprived of

13  the key opportunity to review Hofer's written materials *before* their respective appointments with

14  the Plaintiff.  This prejudice can not be undone except by compelling Plaintiff to appear for a

15  second round of interviews with the Honolulu-based doctors, this time at his own expense. In the

16  same vein, the IME doctors will not have the benefit of reviewing the results of Dr. Hofer's

17  examinations for the purpose of providing rebuttal.  Importantly, the Court should note that

18  Cabras' lead time to schedule the recently completed IMEs was *several months*, and that,

19  accordingly, rescheduling them was simply not an option.   Since the IMEs had to proceed as

20  scheduled Plaintiff must bear any additional costs associated with subsequent work by the IME

21  examiners for rebuttal or otherwise.  Alternatively, Dr. Hofer must be barred from testifying.

22      ///

23      ///

24      ///

1    This motion is supported by the attached Memorandum of Points and Authorities,

2  Exhibits A - H, Declaration of David Ledger, and all pleadings and papers on file herein.

3    DATED: Hagåtña, Guam, November 13, 2006.

4  CARLSMITH BALL LLP

5

6  DAVID LEDGER
   Attorneys for Defendant
7  Cabras Marine Corporation

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## I.    **INTRODUCTION**

Plaintiff John Brady Barrineau ("Plaintiff") designated Dr. Hofer as an expert witness, but failed to disclose written reports of the results of four days worth of neuropsychological examinations performed by Dr. Hofer in June and July 2005. That failure violates Rule 29(a)(2)(B) and this Court's Order Granting First Stipulation Extending Case Management Order Deadlines dated June 5, 2006. Under the June 5th Order, Dr. Hofer's expert opinions were to be disclosed not later than July 3, 2006. Despite Cabras' repeated requests for disclosure and requests to resolve the dispute, no progress was made.

The failed disclosure prejudices Cabras because its medical experts have been deprived of knowing the results of the neuropsychological examinations *before conducting their own examinations*. No one can reasonably quarrel over whether or not the results of four days worth of neuropsychological examinations would be telling. Likewise, Cabras' medical experts have no basis to challenge Dr. Hofer's work.

Rule 37(c)(1) requires the Court to strike Plaintiff's designated expert witness as a sanction for violating Rule 26(a)(2)(B), unless Plaintiff proves that the violation was substantially justified and harmless. Because the violation was neither substantially justified nor harmless, the Court should grant this motion to strike Dr. Hofer as Plaintiff's expert witness. In the alternative, Defendant requests that this Court order Plaintiff to produce Dr. Hofer's reports and opinions within five calendar days and to make Dr. Hofer immediately available for deposition at Plaintiff's expense. The Court should also order Plaintiff to pay any additional costs Cabras incurs with its medical experts as a result of the failed disclosure.

## II.    <u>BACKGROUND</u>

Plaintiff's attorneys, William Fitzgerald ("Fitzgerald") and Bruce Berline ("Berline"), filed the present lawsuit on behalf of Plaintiff, alleging that Plaintiff had suffered "permanent and painful injuries of body and mind," from an accident that occurred while he was working as a commercial diver for Defendant Pro Marine.  Amd. Compl. at 3, ¶ 27.

To prove the allegations Mr. Fitzgerald and Mr. Berline arranged for Dr. Hofer to evaluate Plaintiff for effects of the diving accident.  Over the course of several days, in particular June 23-24 and July 15-16, 2005, Dr. Hofer (admittedly) performed "extensive neuropsychological and psychological evaluation" of Plaintiff.  Exh. A.  On April 25, 2006, Dr. Hofer sent Mr. Fitzgerald a letter (the "April 25, 2006 Letter") regarding "follow-up recommendations" that summarized some of her findings.  Exh. A.  In it, she indicates that her tests and evaluations led her to diagnose Plaintiff with dementia, post-traumatic stress disorder, and major depressive disorder.  Exh. A.  Dr. Hofer also stated that **"[a] complete neuropsychological report of these specific tests will follow early next week."**  Exh. A.  One of Defendant's medical experts, Brian Goodyear, Ph.D, quickly noted this important information and indicated that the neuropsychological reports were of key importance to his assessment of Dr. Hofer's work and examination of the Plaintiff.  Exh. C.

Plaintiff identified Dr. Hofer as an expert witness in his Disclosure of Expert Witnesses, served to Defendant on January 20, 2006.  Exh. B.  Defendants have made **repeated requests** to obtain a copy of Dr. Hofer's written results of the neuropsychological examinations.  *See* Exhs. C, D, E, F, and G.  When those requests failed, and the deadline for production passed, Defendants attempted to serve notice of a records deposition and subpoena duces tecum on Dr. Hofer.  Ledger Decl., ¶ 13.  In doing so, Ledger discovered that Dr. Hofer had moved to the mainland of the United States.  Ledger Decl., ¶ 14; Exh. H.  When Ledger contacted Fitzgerald

to apprise him of the situation, Fitzgerald referred him to Berline as the person responsible for expert witness disclosures. Ledger Decl. ¶ 15. After contacting Mr. Berline, and receiving no response whatsoever, it became clear that the disclosures would not be forthcoming, and that this motion would be required. Ledger Decl. ¶ 15. In short, the need for this motion rests entirely with Plaintiff. There is no justification for Plaintiff's failure to respond to Defendant's reasonable efforts to obtain materials that the Plaintiff is required to disclose under the Federal Rules of Civil Procedure.

## III.    LEGAL ANALYSIS AND ARGUMENT

### A.    Plaintiff's Failure To Submit Expert Witness Reports Violates Rule 26(a)(2)(B).

Under the Federal Rules of Civil Procedure, all witnesses giving expert testimony per the Federal Rules of Evidence must be disclosed, and witnesses retained to provide expert testimony must prepare a report for disclosure:

> (2) Disclosure of Expert Testimony
>
> (A)    In addition to the disclosures required [regarding fact witnesses], a party shall disclose to other parties the identity of any person who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence.
>
> (B)    Except as otherwise stipulated or directed by the court, this disclosure **shall**, with respect to a witness who is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony, **be accompanied by a written report prepared and signed by the witness**. The report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefore; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.
>
> (C)    These disclosures shall be made at the times and in the sequence directed by the court[.]

Fed. R. Civ. P. 26(a)(2) (emphasis added). All disclosures must be in writing, signed by counsel, and served to opposing counsel. Fed. R. Civ. P. 26(a)(4). Furthermore, each disclosure must be delivered by the deadline for expert disclosures set by the trial judge under Rule 26(a)(2)(C).

Plaintiff failed to deliver these expert disclosures. Despite several requests and attempts by Defendants to obtain the disclosures, Dr. Hofer's findings have been altogether withheld by her. Plaintiff not only failed to disclose the report referred to in the April 25, 2006 Letter, but also failed to disclose any details of what Dr. Hofer described as "extensive" neuropsychological and psychological tests. Exh. A.

Rule 26 requires both a report and the details of data and information considered in reaching opinions contained in the report. Fed. R. Civ. P. 26(a)(2)(B). Thus, not only are formal reports discoverable, but also draft reports, notes, preliminary opinions, and details of test results. *See Krisa v. Equitable Life Assurance Society*, 196 F.R.D. 254, 256-57 (M.D. Pa. 2000); *BCF Oil Refinery, Inc. v. Consolidated Edison Co.*, 171 F.R.D. 57, 62 (S.D.N.Y. 1997); *Caruso v. Schwarzman*, Nos. 93- 6733, 94- 2779, 1994 WL 719759 (E.D. Pa. Dec. 27, 1994).

The purpose of Rule 26 is to eliminate unfair surprise to the opposing party and to conserve resources. *Reed v. Binder*, 165 F.R.D. 424, 428 (D.N.J. 1996). An expert's report fulfils the Rule 26 requirements when it is "sufficiently complete, detailed and in compliance with the Rules so that surprise is eliminated, unnecessary depositions are avoided, and costs are reduced." *Id.*

Needless to say, by virtue of its complete non-disclosure, Dr. Hofer's report is insufficient, incomplete, and does not comply with the Rules. Indeed, Dr. Hofer's evaluation of Plaintiff after four days worth of examinations is a ***complete secret***. Plaintiff's failure to produce the results of Hofer's work is precisely what the Rule seeks to avoid: Defendant and its IME medical experts are left in the dark, and Cabras has had to bear the cost of additional efforts to

obtain the undisclosed information through the attempted service of records deposition and subpoena duces tecum.

Furthermore, while full and complete disclosure is indispensable for the parties, it is also intended for the benefit of the presiding court. The disclosure requirements assist the court in ruling on the admissibility of expert opinion testimony by providing a complete statement of the opinions and their factual bases. Under the Federal Rules of Evidence, the court must fulfill its "gatekeeping" obligations of ensuring that expert testimony rests on a reliable foundation. *Kumho Tire Co.* v. *Carmichael*, 526 U.S. 137, 141 (1999); Fed. R. Evid. 702. Rule 26(a)(2)(B) facilitates this "gatekeeping" function. Thus, Plaintiff's failure to supply full and complete expert witness disclosure not only harms the Defendants, but also threatens to subvert efficient judicial decision-making.

**B.     The Failure to Submit Expert Witness Reports Results in Automatic and Mandatory Exclusion Under Rule 37(c)(1).**

Rule 37(c)(1) was specifically designed to address the failure of parties to submit expert reports. It *requires* the exclusion of expert testimony where the expert report has not been submitted:

> (1)  **A party that without substantial justification fails to disclose information** required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), **is not, unless such failure is harmless, permitted to use as evidence** at a trial, at a hearing, or on a motion **any witness or information not so disclosed**.

Rule 37(c)(1) (emphasis added); *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). The rule is *self-executing and mandatory*. *See* Fed. R. Civ. P. 37 advisory committee's notes (1993 Amendments, Subdivision (c)); *Yeti by Molly*, 259 F.3d at 1106-07. The Ninth Circuit has explained that Rule 37 "gives teeth to [the] requirements by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not

1   properly disclosed." *Yeti by Molly*, 259 F.3d at 1106.

2       The courts have construed this rule strictly. Even where a party "never violated an

3   explicit court order to produce the [expert] report and even absent a showing in the record of bad

4   faith or willfulness, ***exclusion is the appropriate remedy for failing to fulfill the required***

5   ***disclosure*** requirements of Rule 26(a)." *Id.* (emphasis added); *see also Ortiz-Lopez v. Sociedad*

6   *Espanola de Auxilio Mutuo Y Beneficiendia de Puerto Rico*, 248 F.3d 29, 35 (1st Cir. 2001) (use

7   of sanctions permissible even where litigant's entire cause of action or defense is precluded);

8   *Dura Automotives Systems of Indiana, Inc. v. CTS Corp.*, 285 F.3d 609 (7th Cir. 2002) (district

9   court may exclude experts from testifying where expert reports were untimely filed).

10

11      There are only two exceptions that can ameliorate the harshness of this rule. The

12  information can be introduced if the party proves that its failure to disclose was "substantially

13  justified" or "harmless." *Id.*; Fed. R. Civ. P. 37(c)(1). In *Yeti by Molly*, for example, ignorance

14  was not a sufficient justification. *Yeti by Molly*, 259 F.3d at 1106. The burden to show

15  harmlessness is on the party that failed to disclose. As the court in *Yeti by Molly* explained:

16

17              Nor has [defendant] shown that the delay was harmless.
18              [Defendant] asserts that the burden of proving harm is on the party
                seeking sanctions; we disagree. Implicit in Rule 37(c)(1) is that
19              the burden is on the party facing sanctions to prove harmlessness.

20

21  *Id.* at 1107; *see also Wilson v. Bradlees of New England, Inc.*, 250 F.3d 10, 21 (1st Cir. 2001)

22  ("[I]t is the obligation of the party facing sanctions for belated disclosure to show that its failure

23  to comply with [Rule 26] was either justified or harmless[.]") (citations omitted).

24      Plaintiff's expert witness disclosure is fatally deficient under Rule 26(a)(2)(B). Plaintiff

25  has failed to provide written results of multiple examinations admittedly performed by Dr. Hofer.

26  Ledger Decl. ¶ 15. Only Dr. Hofer, and maybe Plaintiff and his lawyers, know the results of the

27  examinations. It is impossible for Defendants to determine the focus or theme of Dr. Hofer's

28

expected testimony, the basis for her expected conclusions and opinions, or any of the other foundational predicates to her trial testimony. The importance of Dr. Hofer's written results of neuropsychological clinical examinations can not be overstated. The reports are a key piece of evidence for both parties, and is of critical importance to counsel and the Court in evaluating Plaintiff's claims. As such, Defendants are limited in their ability to prepare rebuttal expert reports and otherwise prepare for trial. Ledger Decl. ¶ 15. Under these circumstances, it is more than just a little hopeless that Plaintiff would be able to show "substantial justification" for failing to disclose, or that such failure is "harmless" to Defendant. Therefore, under Rule 37(c)(1), Dr. Hofer's testimony must be excluded.[1]

C.    **The Failure to Submit Dr. Hofer's Expert Witness Report Violates The Court's Case Management Order**

Plaintiff's failure to disclose is made worse by Plaintiff's violation of the Court's Case Management Order dated June 5, 2006. Disclosure under Rule 26(a)(2) must be made "at the times and in the sequence directed by the court." Fed. R. Civ. P. 26 (a)(2)(C).

Where a party violates a court-ordered timetable for discovery, that evidence will be excluded. *Hostnut.com, Inc. v. Go Daddy Software, Inc.*, 2006 WL 2573201, *3 (D. Ariz. Sept. 6, 2006). As the Ninth Circuit has explained, "[i]n these days of heavy caseloads, trial courts set schedules and establish deadlines to foster the efficient treatment and resolution of cases." *Wong v. Regents of the Univ. of Cal.*, 410 F.3d 1052, 1060 (9th Cir.2005). "Parties must understand that they will pay a price for failure to comply strictly with scheduling and other orders, and that failure to do so may properly support severe sanctions[.]" *Id.* "As the torrent of civil and criminal cases unleashed in recent years has threatened to inundate the federal courts, deliverance has been sought in the use of calendar management techniques. [Case management

---

[1] Affadavits containing opinions not disclosed in a Rule 26 report are likewise not admissible at trial. *See, e.g., Brumley v. Pfizer, Inc.*, 200 F.R.D. 596, 603-04 (S.D. Tex. 2001); *Penland v. BIC Corp.*, 796 F. Supp. 877, 881 (W.D.N.C. 1992).

orders are] an important component of those techniques." *Johnson v. Mammoth Recreation, Inc.*, 975 F.2d 604, 611 (9th Cir. 1992).

Case management schedules "shall not be modified except upon a showing of good cause[.]" Fed.R.Civ.P. 16(b). "Good cause" in this context primarily refers to the diligence of the party seeking the extension. *Johnson*, 975 F.2d at 609. In the present case, if Plaintiff wished to modify the court-ordered July 3, 2006 deadline, Plaintiff should have moved the Court to modify the Case Management Order. Plaintiff did not. Nor did Plaintiff ever request Defendants stipulate to such an extension. Presumably, this was because Plaintiff could not show no "good cause" that would warrant a second extension.

The reasons behind Plaintiff's failure to disclose Dr. Hofer's reports are likewise unknown. The failure could be a conscious and deliberate litigation strategy rather than the result of inadvertent oversight or some other reason. The reports could be detrimental to Plaintiff's claims. If on the other hand the written reports do not exist, no different ruling on this motion is warranted because the effect on Cabras and trial preparation is the same. Defendant consistently and persistently reminded Plaintiff's attorneys to produce the write-ups, to no avail. Under these circumstances, the Court should grant Defendant's motion to strike Dr. Hofer as a witness. *See Atmel Corp. v. Information Storage Devices, Inc.*, 189 F.R.D. 410, 416 (N.D. Cal. 1999) (Courts should not encourage litigants to gamesmanship and evasion of disclosure rules by overlooking Rule 26(a)(2)(B) requirements).

D.    **Alternative Relief:  Immediate Production of Withheld Material Should Be Ordered**

In the event the Court does not strike Dr. Hofer as a witness, then at a minimum the following should be implemented. Plaintiff should be required to produce the withheld materials within five (5) days. The Court should order Plaintiff to make a complete disclosure of all materials and communications from Dr. Hofer, including the reports referenced in her April 25,

2006 letter to Mr. Fitzgerald.  After providing these materials, Plaintiff must arrange Dr. Hofer for deposition. The Court should note that with timely disclosures, Defendant could have taken Dr. Hofer's deposition in Guam and would not need to travel to Seattle.

E.    **Attorneys' Fees And Costs Requested**

The Court is authorized to impose appropriate sanctions for violations of Rule 26(a), including "requiring payment of reasonable expenses, including attorney's fees, caused by the failure[.]"  Fed. R. Civ. P. 37(c)(1).  Here, Plaintiff was ordered to produce Dr. Hofer's expert materials by July 3, 2006.  Plaintiff's failure to do so has forced Defendants to subpoena the expert witness documents, serve notice of records deposition, and incur further attorneys' fees. These fees and costs, which were accrued due to Plaintiff's violation of disclosure rules, should be borne by Plaintiff and not Defendant, and therefore Defendant requests that the Court order those amounts be reimbursed to Defendant.  In addition, Defendant requests that the attorneys' fees and costs incurred in bringing this motion should be awarded in an amount determined by the Court.

IV.    **CONCLUSION**

Based upon the foregoing, Defendants respectfully submits that its motion should be granted in its entirety.

DATED: Hagåtña, Guam, November 13, 2006.

CARLSMITH BALL LLP

DAVID LEDGER
Attorneys for Defendant
Cabras Marine Corporation

1    CARLSMITH BALL LLP

2
     DAVID LEDGER
3    Carlsmith Ball LLP Building
     Capitol Hill
4    Post Office Box 5241
     Saipan, MP 96950-5241
5    Tel No. 670.322.3455

6    Attorneys for Defendant
     Cabras Marine Corporation
7

8
                    IN THE UNITED STATES DISTRICT COURT
9
                                FOR THE
10
           COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS
11

12
13   JOHN BRADY BARRINEAU,                    CIVIL ACTION NO. CV05-0028

14                   Plaintiff,

15          vs.
                                              **DECLARATION OF DAVID LEDGER**
16   PROMARINE TECHNOLOGY and
     CABRAS MARINE CORPORATION,
17
                     Defendants.
18

19          I, DAVID LEDGER, declare under penalty of perjury that the following statements are

20   true and correct:

21          1.      I have personal knowledge of the facts stated in this declaration except as
22
     otherwise indicated.
23
24          2.      I would testify competently as to these facts if called by the Court.

25          3.      I am licensed to practice law before all courts in the Commonwealth of the

26   Northern Mariana Islands and am admitted to this Court.

27          4.      I am an attorney for Defendant Cabras Marine Corporation.
28

4824-5481-3953.1.052540-00009

5.      This Declaration is filed in support of Defendant's Motions to Strike Expert Witness.

6.      Attached hereto marked Exhibit A is a true and correct copy of letter dated April 25, 2006 addressed to Attorney Bill Fitzgerald from Pamina J. Hofer, Ph.D., produced by Plaintiff during discovery.

7.      Attached hereto marked Exhibit B is a true and correct copy of Plaintiff's Initial Disclosure Statement Pursuant to LR 16.2CJ(d) filed January 18, 2006.

8.      Attached hereto marked Exhibit C is a true and correct copy of email dated August 8, 2006 to Bruce Berline from David Ledger.

9.      Attached hereto marked Exhibit D is a true and correct copy of email dated August 14, 2006 to Bruce Berline from David Ledger.

10.     Attached hereto marked Exhibit E is a true and correct copy of letter dated August 31, 2006 addressed to Bruce Berline from David Ledger.

11.     Attached hereto marked Exhibit F is a true and correct copy of email dated September 7, 2006 to Bruce Berline from David Ledger.

12.     Attached hereto marked Exhibit G is a true and correct copy of email dated September 8, 2006 to Bruce Berline from David Ledger.

13.     When the above-listed requests for expert disclosures failed, I attempted to serve notice of a records deposition and Subpoena Duces Tecum on Dr. Hofer.

14.     In attempting to serve Dr. Hofer with a Subpoena Duces Tecum, I learned from the process server that Dr. Hofer had moved to Seattle, Washington. Attached hereto as Exhibit H is a true and correct copy of Process Server Sherry Fejeran's notes regarding service of a Subpoena Duces Tecum on Dr. Hofer.

15.    Plaintiff's counsel William Fitzgerald advised me that counsel Bruce Berline was responsible for Plaintiff's expert witness disclosures.  Mr. Berline has not responded to any of my requests for Dr. Hofer's neurological reports, attached hereto as Exhibits C through G.

16.    Defendant's expert witness Brian Goodyear, Ph.D,  has noted the significance of the undisclosed reports referenced in Dr. Hofer's April 25, 2006 letter to Mr. Fitzgerald. Dr. Goodyear has explained to me that such reports are generally the best source for objective findings of the examiner.

I declare under penalty of perjury that the foregoing is true, correct and complete.

Executed this 13th day of November 2006 at Hagåtña, Guam.

DAVID LEDGER

# EXHIBIT

# "A"

# HOFER CLINIC
Pamina J. Hofer, Ph.D.
Clinical Psychological and Neuropsychological Services
Telephone No: (671) 734-0382 / 9694
Facsimile No: (671) 734-0393

> Confidential for use of the
> attorneys in anticipation
> of a preparation for litigation.

April 25, 2006

Attorney Bill Fitzgerald
Saipan, MP

Re: John ("Brady") Barrineau
Follow-up recommendations

Dear Mr. Fitzgerald

Thank you for allowing me to evaluate this young man regarding cognitive and emotional changes subsequent to his diving accident, which occurred May 24, 2005. I performed an extensive neuropsychological and psychological evaluation of Mr. Barrineau on June 23, 24, July 15 and 16, 2005. A complete neuropsychological report of these specific tests will follow early next week.

According to Mr. Barrineau, and the materials I received regarding his case, he sustained both a closed head injury and loss of consciousness secondary to oxygen deprivation during a work-related dive. As I understand the incident, Mr. Barrineau was working as a diver, repairing a ship, when his oxygen was inadvertently turned off at its source, on the boat above him. He related that he had been trained for such an emergency, and did not panic. He even recalled discussing the emergency procedures for loss of air with another (newer) diver the day before the incident. When Brady's oxygen stopped, he knows he released his equipment, but it became entangled in his umbilical line and pulled him down further (he estimated 80'). He struggled, and was finally able to remove his harness, and then swam to the surface as quickly as possible. He remembers "cramping": feeling "on fire" as his lungs ached and he tried to swim to get to the surface to take a breath. Unfortunately, he fell unconscious before he reached the surface. Apparently, he sustained a closed head injury as his head struck the underside of the boat (he believes he hit the bilge wheel). He recalls hallucinating – seeing himself hanging on the bilge wheel like a man dangling from a noose. He also remembers regaining consciousness, feeling "elated" and "giddy", but notes he "didn't feel like myself". He remembers shaking; feeling terrified; screaming, "What happened to my air?" and said he was unsure if he could ever trust anybody again after that incident.

Mr. Barrineau was only 4-7 weeks post-accident when he was evaluated at Hofer Clinic on Guam, in 2005. He described being unable to get back in the water since that incident. He found that both puzzling and frustrating, as he'd been diving since the age of 12. Since the incident he described himself as having memory lapses that terrified him. He recalled having accused his wife of infidelity; suddenly believing his 3-year-old and 6-month-old children "aren't mine". He related stories others told of him in the first days after his accident in which they described him as acting "like a zombie". He also described having "trouble focusing", being "scatter brained", exhibiting "bad decision-making", having "bad judgment", becoming irritated "all of a sudden", and "not caring

Exhibit A

Barrineau, John Brady                    Page 2                 Recommendation letter April 25, 2006

about things" in general that used to be very important to him.   He notes he's also felt "helpless" to "get back to my old self".

I presented my findings to Mr. Barrineau, his wife, and Dr. Janet McCullough at your offices on September 3, 2005.  Based on the neuropsychological findings, I explained the changes in Mr. Barrineau's overt behavior to his family & treating professional, and I made treatment recommendations. Amongst my recommendations was to perform repeated neuropsychological testing with Mr. Barrineau when he was one year post-accident.  I recommended that prognosis for long-term functioning is delayed until that time.

Brady's diagnoses include:

Axis I:  **Dementia secondary to combined anoxia** (lack of oxygen – near drowning accident – May 24, 2005) **& subsequent head injury** (while unconscious).  Brady's attention, concentration, judgment, and other executive (higher order cognitive) functions are impaired; he is impulsive; and his thinking processes are far slower than one would expect of a man his age and intelligence.

**Post Traumatic Stress Disorder**, severe; and

**Major Depressive Disorder** - likely secondary to brain changes secondary to combined anoxia and closed head injury; psychological/emotional reactions to accident (e.g., inability to get in the water again; realization of his own mortality); and social changes (e.g., being fired from job; being unable to work due to combination of Axis I conditions).

Mr. Barrineau is now almost exactly one-year post accident.  The following investigations are strongly recommended:

1.  Brady should participate in repeated neuropsychological testing (Time 2).  The results of these tests can be compared with the previous findings (4-7 weeks post-accident).  Prognosis for further improvement in his cognitive and emotional functioning can be made, based on these findings.

2.  As part of his updated neuropsychological evaluation, I would like to interview at least two collateral sources regarding changes in Brady's behavior.  These should be persons who have known Brady for some time, and who can comment on both how he used to think/act and how he functions today.  Also, these cannot be persons who might have economic gain from his legal case (e.g., his wife).

3.  a) Mr. Barrineau should have another MRI with T1 and T2-weighted images; both with and without contrast. (You may wish to consult a radiologist directly before requesting these imaging studies in order to obtain the most detailed imaging studies possible).

Barrineau, John Brady                    Page 3                    Recommendation letter April 25, 2006

b) During the MRI, special attention should be paid to reviewing the hippocampus. Both coronal and axonal images should be obtained — at least of this area. These (current) images should be compared with those obtained in the MRI of 2005.

c) Comparisons should also be made between these MRI's regarding changes that might be attributable to a closed head injury (e.g., coup and contra-coup indicators).

4. If possible, a Positron Emission Tomography (PET) study should be conducted on Brady. This type of imaging study uses oxygen- or glucose-uptake to indicate physiological changes in brain function (rather than structure, as shown by the MRI). PET is available in many major US cities. I have also been able to access a PET in Melbourne, Australia. If possible, the Australian PET would be preferable, as travel there requires less flight time and only one time-zone change in comparison to Guam. Thus, there is less physiological stress on the patient.

Please feel free to contact me if you have further questions about this case.

Yours sincerely,

Pamina J. Hofer, Ph.D., B.C.E.T.S.
Board Certified Expert in Traumatic Stress
Clinical Neuropsychologist
Guam License CP-08; CNMI License CP-12

# EXHIBIT

# "B"

1 | **William M. Fitzgerald, Esq.**
**LAW OFFICE OF WILLIAM M. FITZGERALD**
2 | 1ˢᵗ Floor, Macaranas Building
P.O. Box 909
3 | Saipan, MP 96950
Telephone (670) 234-7241
4 | Facsimile (670) 234-7530

C O P Y of
Original Filed
on this date

JAN 18 2006

Clerk
District Court
for The Northern Mariana Islands

6 | **Bruce Berline, Esq.**
**Law Office of Bruce Berline**
7 | 1ˢᵗ Floor, Macaranas Building
P.O. Box 5682 CHRB
8 | Garapan, Saipan, MP 96950
Telephone: (670) 233-3663
Facsimile: (670) 233-5262

10 | Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE

COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

JOHN BRADY BARRINEAU,                    ) CV NO. 05-0028
                                          )
            Plaintiff,                    )
                                          )
        v.                                ) **PLAINTIFF'S INITIAL DISCLOSURE**
                                          ) **STATEMENT PURSUANT TO LR**
                                          ) **16.2CJ(d)**
PRO MARINE TECHNOLOGY and CABRAS )
MARINE CORPORATION,                       )
                                          ) Date:  November 30, 2005
            Defendants.                   ) Time:  8:30 a.m.
                                          ) Judge: Munson
_____ )

   **COMES NOW** Plaintiff John Brady Barrineau, by and through his counsel of record, William Fitzgerald and Bruce Berline, and submits the following disclosure statement pursuant to Fed. R. Civ. P. 26(a)(1) and LR 16.2CJ(d):

I.    **PERSONS LIKELY TO HAVE DISCOVERABLE INFORMATION**

   1.    Plaintiff John Brady Barrineau, c/o Bruce Berline, Esq.

Exhibit **B**

2.   Julie Barrineau, c/o Bruce Berline, Esq., has knowledge about Plaintiff's injuries and the effect of the injuries upon Plaintiff.

3.   Ben Matanabe - PMT employee, has knowledge of events on board the M/V Cajun the day of the injury, has knowledge of PMT's operations and procedures.

4.   Kenneth Collard - PMT employee, has knowledge of events on board the M/V Cajun the day of the injury, has knowledge of PMT's operations and procedures.

5.   Carey Rose - PMT employee, has knowledge of events on board the M/V Cajun the day of the injury, has knowledge of PMT's operations and procedures.

6.   Chris Shelton - PMT employee, has knowledge of events on board the M/V Cajun the day of the injury, has knowledge of PMT's operations and procedures.

7.   Vance- last name unknown, PMT employee, has knowledge of events on board the M/V Cajun the day of the injury, has knowledge of PMT's operations and procedures.)

8.   Connel - last name unknown, PMT employee, and has knowledge of events on board the M/V Cajun the day of the injury, has knowledge of PMT's operations and procedures..

9.   Doctor Pamela J. Hofer - Hofer Clinic, P.O. Box 5208, UOG Station, Mangilao, Guam, 96923,(671) 734-0382, has knowledge of Plaintiff's injuries.

10.   Doctor Janet McCullough, 323-32211, P.O. Box 500745 Saipan, has knowledge of Plaintiff's injuries.

11.   Doctor William Hay, CNMI Department of Public Health, Community Guidance Center, 323-6560, has knowledge of Plaintiff's injuries.

12.   Employees of the U.S. Navy's recompression chamber located in Guam

13.   Employees of Cabras Marine, names unknown at this time, who were on board the M/V Cajun at the time Plaintiff was injured.

14.   Employees of the United States Coast Guard, including the employees of the Marine Safety Office, specifically, without limitation, Lt. Donna Leoce and a gentleman by the last name of Delgado.  These people may have knowledge regarding the dive accident and following investigation.

Plaintiff reserves the right to amend and supplement this list if additional information becomes available during the course of discovery, pursuant to Fed. R. Civ. P. 26(e). The subjects of information are provided to disclose the general topics of information to which that person may testify. Such information is not to be construed as an exhaustive, exclusive list nor intended to limit the scope of the individual's testimony if called as a witness at trial.

II.    LISTING, DESCRIPTION AND LOCATION OF DOCUMENTS, DATA COMPILATIONS AND TANGIBLE THINGS

1.    Medical records and medical bills - Plaintiff is presently in the process of obtaining all relevant medical records presently located at Commonwealth Health Center, Garapan, Saipan, Harmon Doctors Clinic, Guam, Guam Memorial Hospital, Guam, CNMI Community Guidance Center, Saipan, MRI Group, Guam, Janet McCollough, Saipan, and the Hofer Clinic, Guam, and other medical care providers which provided care for Plaintiff.

2.    Coast Guard Documents - In Plaintiff's possession and attached hereto.

3.    Various records of Plaintiff including dive certifications which are in plaintiff's possession attached hereto.

4.    Plaintiff's payroll records and tax records of which Plaintiff is in the process of obtaining.

5.    The U.S. Navy Diving Manual available online.

III. DESCRIPTION AND COMPUTATION OF DAMAGES

General damages - as a result of his injury, Plaintiff has suffered irreparable injury to his brain. Plaintiff suffered physical pain and mental anguish and estimates general damages to be 500 dollars per day. Plaintiff is presently expected to live to approximately 78 years of age. Accordingly, general damages amount to approximately 7,847,500.00 dollars.

Special Damages - total medical expenses to date are approximately $10,000.00 and will increase, however expert opinion is needed in order to determine the total amount of expected medical

expenses.

Plaintiff is unable to continue work as a commercial diver and thus has lost wages in the approximate amount of three thousand to four thousand dollars per month since he was injured. Expert opinion will be needed to provide additional amounts

## IV. INSURANCE AGREEMENTS

Other than insurance policies carried by Defendant PMT, Plaintiff is unaware of any other policies that might provide insurance coverage.

## V. EXPERT TESTIMONY

No experts have been retained by Plaintiff to date.

Dated this _18th_ day of January, 2006.

BRUCE BERLINE
Attorney for Plaintiff
P.O. Box 5682 CHRB
Saipan, MP 96950

# EXHIBIT

# "C"

# June M.C. Borja

**From:**     David P. Ledger
**Sent:**     Tuesday, August 08, 2006 10:02 AM
**To:**       'Bruce Berline'; 'Fitzsaipan@aol.com'
**Cc:**       'tcsterling@kbsjlaw.com'; June M.C. Borja
**Subject:**  BARRINEAU v. Cabras Marine et al

Bruce - One of our experts in Honolulu, Brian Goodyear, Ph.D., has reviewed Pamina Hofer's report dated April 25, 2006. One of his comments is:

" *She makes reference to a "complete neuropsychological report", which was supposed to follow a week after the letter.  Is this now available?  I see also that she recommended repeat neuropsychological testing a year after the injury.  I would assume this has now been done and that another report has now been written.  I would like to see all of her reports prior to my evaluation if possible.*"

Please inform us as to the existence and whereabouts of the items our expert refers to.  We will obviously need these materials as soon as possible, so we would appreciate your expedited attention to this matter.

Thanks & regards


David Ledger
Partner, Carlsmith Ball LLP (Guam, U.S.A.)
Office ph: 671 472 6813, ext. 302
Office fax:  671 477 4375
Mobile:  671 688 3352
dledger@carlsmith.com


***************************************************
NOTICE: This message contains confidential and privileged information. If it has been sent to you in error, please reply to inform the sender of the error and then delete this message. Thank you.
***************************************************

Exhibit **C**

8/2006

# EXHIBIT

# "D"

## June M.C. Borja

**From:** David P. Ledger

**Sent:** Monday, August 14, 2006 5:01 PM

**To:** 'Bruce Berline'

**Cc:** 'tcsterling@kbsjlaw.com'; June M.C. Borja

**Subject:** RE: BARRINEAU v. Cabras Marine et al

Bruce- please inform us of the status of voluntary production of Ms. Hofers records. Absent some positive news from you, we will go the subpoena route similar to the Janet McCullough situation.

Thanks,

David Ledger
Partner, Carlsmith Ball LLP (Guam, U.S.A.)
Office ph: 671 472 6813, ext. 302
Office fax: 671 477 4375
Mobile: 671 688 3352
dledger@carlsmith.com

****************************************************

NOTICE: This message contains confidential and privileged information. If it has been sent to you in error, please reply to inform the sender of the error and then delete this message. Thank you.
****************************************************

-----

From: Bruce Berline [mailto:bruce@saipanlaw.com]
Sent: Tuesday, August 08, 2006 2:19 PM
To: David P. Ledger
Subject: Re: BARRINEAU v. Cabras Marine et al

David I will look into this and get back to you.

Bruce

----- Original Message -----
From: David P. Ledger
To: Bruce Berline ; Fitzsaipan@aol.com
Cc: tcsterling@kbsjlaw.com ; June M.C. Borja
Sent: Tuesday, August 08, 2006 10:01 AM
Subject: BARRINEAU v. Cabras Marine et al

Bruce - One of our experts in Honolulu, Brian Goodyear, Ph.D., has reviewed Pamina Hofer's report dated April 25, 2006. One of his comments is:

" *She makes reference to a "complete neuropsychological report", which was supposed to follow a week after the letter. Is this now available? I see also that she recommended repeat neuropsychological testing a year after the injury. I would assume this has now been done and that another report has now been written. I would like to see all of her reports prior to my evaluation if possible.*"

Please inform us as to the existence and whereabouts of the items our expert refers to. We will obviously need these materials as soon as possible, so we would appreciate your expedited attention to this matter.

Thanks & regards

David Ledger
Partner, Carlsmith Ball LLP (Guam, U.S.A.)

**Exhibit D**

Office ph: 671 472 6813, ext. 302
Office fax:  671 477 4375
Mobile:  671 688 3352
dledger@carlsmith.com

***************************************************************

NOTICE: This message contains confidential and privileged information. If it has been sent to you in error, please reply to inform the sender of the error and then delete this message. Thank you.
***************************************************************

# EXHIBIT

# "E"

# CARLSMITH BALL LLP

A LIMITED LIABILITY LAW PARTNERSHIP

BANK OF HAWAII BLDG., SUITE 401
134 WEST SOLEDAD AVENUE, P.O. BOX BF
HAGÅTÑA, GUAM 96932-5027
TELEPHONE 671.472.6813   FAX 671.477.4375
WWW.CARLSMITH.COM

DIERCT EXTENSION NO.:                    DLEDGER@CARLSMITH.COM                    OUR REFERENCE NO.:
X302                                                                                              052540-00009

August 31, 2006

<u>VIA FACSIMILE [(670) 233-5262]</u>

Bruce Berline, Esq.
1st Floor, Macaranas Building, Beach Road
Post Office Box 5682
CHRB, Garapan, Saipan MP 96950

Re:     John Brady Barrineau vs. Pro Marine Technology, et al.
          CNMI District Court Civil Case No. CV05-0028

Dear Bruce:

This is to follow up on recent communications regarding your expert witness Pamina Hofer.

As I informed you on August 29, 2006, in attempting to serve notice of a records deposition and subpoena duces tecum on Ms. Hofer and the Hofer Clinic our process server was informed that the clinic ceased operations, and that Ms. Hofer may have moved to the Mainland U.S.. On August 30, 2006, our process server received information that Ms. Hofer has in fact moved to the mainland U.S..

Ms. Hofer's April 25, 2006 report to Mr. Fitzgerald references four days' worth of evaluations she performed on Mr. Barrineau, and states that reports of such evaluations "will follow early next week", that is, the week of May 1, 2006. One of our experts has requested these reports as essential to his review of the case and assessment of the allegations being made by Mr. Barrineau. Plaintiff's deadline to produce expert materials from Ms. Hofer passed on July 3, 2006. Even though we have made multiple requests, Ms. Hofer's reports have not yet been provided - hence our recent efforts to by-pass expert witness disclosure procedures and subpoena the reports.

Since Ms. Hofer apparently no longer resides on Guam, our efforts to subpoena her reports will require yet more time and substantially more money. Because we are forced to subpoena expert witness documents which should have been voluntarily disclosed on July 3,

HONOLULU    ·    KAPOLEI    ·    HILO    ·    KONA    ·    MAUI    ·    GUAM    ·    SAIPAN    ·    LOS ANGELES

**Exhibit E**

Bruce Berline, Esq.
August 31, 2006
Page 2

2006, we will seek recovery of our client's expenses incurred in serving the notice of records deposition and subpoena duces tecum on Ms. Hofer where she resides, and for the cost of hiring a court reporter to receive the records. If we receive the records before completing the tasks involved in off-island service and the records deposition, then obviously will have no or at least lower costs to recover on behalf of our client.

We would hope for a favorable response from you at your soonest convenience.

Best regards,

David Ledger

DPL/jmcb

cc:    Thomas C. Sterling, Esq., Blair Sterling Johnson Moody Martinez & Leon Guerrero, P.C.
4820-0647-5009.1.052540-00009

# EXHIBIT

# "F"

## June M.C. Borja

**From:** David P. Ledger
**Sent:** Thursday, September 07, 2006 12:19 PM
**To:** 'Bruce Berline'; 'tcsterling@kbsjlaw.com'; Elyze J. McDonald
**Cc:** Fitzsaipan@aol.com; June M.C. Borja
**Subject:** Janet McCullough records depo

Bruce:  You may get a phone call from Tom Clifford informing you that the McCullough records depo will go on as scheduled.  I do not know whether or not Pro Marine intended to take the depo off because, notwithstanding Pro Marine's pending settlement of the plaintiff's claims, Pro Marine will remain in the case as a cross claim defendant.  In any event, we need the records and John Osborn will attend and make arrangements with Tom Clifford to obtain a set of the records produced at the deposition.

On another expert witness discovery matter, we estimate that the cost to conduct a records depo of Ms. Hofer in the states would be about the same to make a motion to the court to obtain the Hofer expert materials you have refused to provide per the expert disclosure rules.  Accordingly, please consider this our effort to resolve a discovery dispute with your office.  Depending upon your response, we will then decide whether to make our motion to compel or to strike Hofer as an expert, or go ahead with the records deposition.  In either case, we will seek to recover our client's costs.  Of course the preferred alternative is to obtain the materials from your office without further adieu or delay.  Though we may have legitimate differences on other aspects of this case, I am at a loss to figure out your refusal to comply with mandatory expert witness disclosure obligations.

David Ledger
Partner, Carlsmith Ball LLP (Guam, U.S.A.)
Office ph: 671 472 6813, ext. 302
Office fax:  671 477 4375
Mobile:  671 688 3352
lledger@carlsmith.com


*************************************************************
NOTICE: This message contains confidential and privileged information. If it has been sent to you in error, please reply to inform the sender of the error and then delete this message. Thank you.
*************************************************************

Exhibit **F**

# EXHIBIT

# "G"

**June M.C. Borja**

**From:**    David P. Ledger
**Sent:**    Friday, September 08, 2006 12:27 PM
**To:**    'Bruce Berline'; Elyze J. McDonald
**Cc:**    Fitzsaipan@aol.com; June M.C. Borja
**Subject:** FW: Barrineau v. Cabras Marine et al.

Bruce:  I have been informed by Bill that the Barrineau expert witness disclosures are your responsibility.  Thus, I am forwarding the e-mail below, first sent on August 30, 2006 but never responded to, to again ask for your cooperation in obtaining Hofer's expert witness materials in the most efficient manner possible given that such materials apparently will not be disclosed per the expert witness disclosure rules. We believe our client will be  entitled to reimbursement of costs incurred to discover  documents which should have been disclosed per the expert witness disclosure rules.

According to Bill, Hofer apparently has some "ethical rules" against disclosing certain materials regarding her patients.  Even if this is the situation, we do not believe any such "rules" would apply to litigation where the patient has put his mental health in issue. Be that as it may, Hofer's April 25, 2006 letter to Bill clearly contemplates providing your office with a report of four day's worth of examinations - she states:  "A complete neuropsychological report of these specific tests will follow early next week".  It is self-evident that the report is a key piece of evidence for both parties.   Our expert has deemed the report to be of critical importance in evaluating the claims.

As mentioned below in my August 30 email, Hofer has moved away from Guam, we think to Seattle. As it appears the only way we will discover the report referred to in her April 25, 2006 letter is by way of a subpoena of her records, we are requesting that you provide us with contact information and an address in Seattle (or elsewhere) where Hofer can be served with the subpoena. Even better would be to see compliance with the July 3, 2006 expert disclosure deadline.  In the event we are unable to discover the materials one way or the other, we will file motions to compel and to strike Hofer as an expert.

Again, we would hope for a favorable response and at least minimal assistance in obtaining Hofer's expert reports and related materials by way of your office providing a location where she can be served with a subpoena.

Regards,

David Ledger
Partner, Carlsmith Ball LLP (Guam, U.S.A.)
Office ph: 671 472 6813, ext. 302
Office fax:  671 477 4375
Mobile:  671 688 3352
lledger@carlsmith.com

*********************************************************
NOTICE: This message contains confidential and privileged information. If it has been sent to you in error, please reply to inform the sender of the error and then delete this message. Thank you.
*********************************************************


From: David P. Ledger
Sent: Wednesday, August 30, 2006 3:16 PM
To: 'Bruce Berline'; Fitzsaipan@aol.com
Cc: 'tcsterling@kbsjlaw.com'; June M.C. Borja
Subject: Barrineau v. Cabras Marine et al.

Bruce:  This is to follow up on recent communications regarding your expert witness Pamina Hofer.

As I informed you on August 29, 2006, in attempting to serve notice of a records deposition and subpoena duces tecum on Ms. Hofer and the Hofer Clinic our process server was informed that the clinic ceased operations, and that Ms. Hofer may have moved to the Mainland U.S..  Today, August 30, 2006, our process server has received in formation that Ms.Hofer has in fact moved to

/8/2006

**Exhibit G**

the mainland U.S..

Ms. Hofer's April 25, 2006 report to Mr. Fitzgerald references four days' worth of evaluations she performed on Mr. Barrineau, and states that reports of such evaluations "will follow early next week", that is, the week of May 1, 2006. One of our experts has requested these reports as essential to his review of the case and assessment of the allegations being made by Mr. Barrineau. Plaintiff's deadline to produce expert materials from Ms. Hofer passed long ago, specifically July 3, 2006. Even though we have made multiple requests, Ms. Hofer's reports have not been provided - hence our recent efforts to by-pass expert witness disclosure procedures and subpoena the reports.

Since Ms. Hofer no longer resides on Guam our efforts to subpoena her reports will require yet more time and substantially more money. Because we are forced to subpoena expert witness documents which should have been voluntarily disclosed on July 3, 2006, we will seek recovery of our client's expenses incurred in serving the notice of records deposition and subpoena duces tecum on Ms. Hofer where she resides, and for the cost of hiring a court reporter to receive the records. If we receive the records before completing the tasks involved in off-island service and the records deposition, then obviously will have no or at least lower costs to recover on behalf of our client.

We would hope for a favorable response from you at your soonest convenience.

Regards,

David Ledger
Partner, Carlsmith Ball LLP (Guam, U.S.A.)
Office ph: 671 472 6813, ext. 302
Office fax:  671 477 4375
Mobile:  671 688 3352
dledger@carlsmith.com

**********************************************************
NOTICE: This message contains confidential and privileged information. If it has been sent to you in error, please reply to inform the sender of the error and then delete this message. Thank you.
**********************************************************

8/2006

# EXHIBIT

# "H"

08/30/06


RE:  CV 05-0028


- Visited with Hofer Clinic, located in Mangilao, knocked on the door, no one answered, I observed a note was inserted between the door and the door jam.  The door was locked, telephone call to the clinic 734-0382, left a message on the answering machine to contact process server.  Proceeded to inquire with the neighbor, he informed me that two weeks ago they moved things out of the clinic, during a conversation with the landlord they discussed that the clinic is officially closed. He, however, thinks she may still be here or she may be coming back because the clinic still has some of her personal belongings and her vehicle, brown van, licence plate YIG 8793 is still in the parking lot of the complex.  (He pointed out the vehicle to me.)
- Telephone call to the Mr. Wolf, 688-9656, he informed me that he has been divorced for three years from Dr. Pamina Wolf.  She no longer lives on Guam. She resides in Washington state.  He did not have a contact number for her.
- Visited with Mangilao mayor's office to locate her last known address, 123 Mangilao Garden Court.
- Telephone call to the University of Guam, I was informed that she is no longer affiliated with the University of Guam.  I was referred to a friend of hers, Dr. Kyle Smith, 735-2879.
- Telephone call to Dr. Kyle Smith, he too informed me that she no longer lives on Guam, the last he heard she will be returning to finish up some cases mid September.  He said that he would email her and have her contact me, I provided him with my contact numbers.  He also had her forwarding address:
  **523 East Ladd Street**
  **Medical Lake,  WA  99022**
- Drove to the last known address, inquired with the neighbors because I could not locate house number 123, when I described her vehicle and that she was a doctor the neighbors pointed out the house.  The house has a for sale sign posted in the yard.


Sherry Fejeran, process server, 8/30/06

1    CARLSMITH BALL LLP

2

     DAVID LEDGER
3    Carlsmith Ball LLP Building
     Capitol Hill
4    Post Office Box 5241
     Saipan, MP 96950-5241
5    Tel No. 670.322.3455

6    Attorneys for Defendant
     Cabras Marine Corporation
7

8

9                    IN THE UNITED STATES DISTRICT COURT

10                                   FOR THE

11          COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

12

13   JOHN BRADY BARRINEAU,              |   CIVIL ACTION NO. CV05-0028

14              Plaintiff,              |

15       vs.                           |
                                        |   **CERTIFICATE OF SERVICE**
16   PROMARINE TECHNOLOGY and          |
     CABRAS MARINE CORPORATION,         |
17                                      |
                Defendants.            |
18

19        The undersigned hereby certifies that on the 13th day of November 2006, I will cause to

20   be served, via electronic filing/service, a true and correct copy of **DEFENDANT CABRAS**

21   **MARINE    CORPORATION'S    MOTION    TO    STRIKE    EXPERT    WITNESS;**

22   **MEMORANDUM IN SUPPORT THEREOF; DECLARATION OF DAVID LEDGER;**

23   **EXHIBITS A - H; CERTIFICATE OF SERVICE** upon the following Counsels of record:

24

25                    William M. Fitzgerald, Esq.
                      Law Office of William M. Fitzgerald
26                    1st Floor, Macaranas Building
                      Post Office Box 909
27                    Saipan, MP 96950

28

4824-5481-3953.1.052540-00009

Bruce Berline, Esq.
Law Office of Bruce Berline
1st Floor, Macaranas Building
Post Office Box 5682 CHRB
Garapan, Saipan MP 96950

and via hand delivery to:

Thomas C. Sterling, Esq.
Blair, Sterling, Johnson, Moody, Martinez & Leon
   Guerrero, P.C.
Suite 1008, Pacific News Building
238 Archbishop Flores Suite
Hagåtña, Guam 96910

DATED:  November 13, 2006.

DAVID LEDGER