THOMAS C. STERLING
BLAIR STERLING JOHNSON
  MARTINEZ & LEON GUERRERO, P.C.
1008 Pacific News Building
238 Archbishop F.C. Flores Street
Hagåtña, Guam 96910
Telephone: (671) 477-7857
Facsimile: (671) 472-4290

THOMAS E. CLIFFORD
Attorney at Law
2nd Floor Alexander Building, San Jose
P.O. Box 506514
Saipan, MP 96950
Telephone: (670) 235-8846/7
Facsimile: (670) 235-8848

*Attorneys for Defendant and Cross-Defendant Pro Marine Technology*

IN THE DISTRICT COURT FOR THE
THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| JOHN BRADY BARRINEAU,<br><br>    Plaintiff,<br> vs.<br><br>PRO MARINE TECHNOLOGY,<br>CABRAS MARINE CORPORATION,<br><br>    Defendants.<br><br>AND RELATED CLAIMS. | CIVIL ACTION NO. CV05-0028<br><br>**CROSS-DEFENDANT PRO MARINE TECHNOLOGY'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR JUDGMENT ON THE PLEADINGS BASED ON GOOD FAITH SETTLEMENT** |

I. STATEMENT OF FACTS

This action was initially filed on September 14, 2005 by Plaintiff **JOHN BRADY BARRINEAU** (hereinafter "Barrineau") against Defendant and Cross-Defendant **PRO MARINE TECHNOLOGY** (hereinafter "Pro Marine") and Defendant **CABRAS MARINE**

**CORPORATION** (hereinafter "Cabras") seeking personal injury damages allegedly resulting from a commercial diving accident. The issues were subsequently joined on the basis of Barrineau's First Amended Complaint filed in or about early April 2006. This First Amended Complaint added Kenneth Collard and Chie N. Collard (hereinafter "Collards") as additional defendants. Thereafter, on August 21, 2006, Cabras answered the First Amended Complaint and also asserted a cross-claim against Pro Marine alleging that the accident at issue was Pro Marine's fault and, as such, that it was entitled to "indemnity or contribution" for any amount which it might be ordered to pay to Barrineau. The cross-claim against Pro Marine does not allege any contractual relationship or *respondeat superior* relationship which might give rise to a claim for express or implied indemnity.

As indicated by the Affidavit of Thomas C. Sterling served and filed herewith, as well as the First Amended Complaint herein, Barrineau sustained his alleged injuries while working as a diver for Pro Marine when Kenneth Collard inadvertently shut off his air supply while Barrineau was underwater cleaning the underside of a

vessel. Such resulted in Barrineau having to execute an emergency ascent during which he allegedly struck his head on the underside of the vessel, briefly lost consciousness, and then surfaced in apparently fairly good physical condition. Pro Marine has admitted fault for accidentally cutting off the air supply to its diver.

As indicated in the First Amended Complaint, Cabras' role was to provide a vessel which transported Pro Marine's crew and equipment to the job site (para. 19). Beyond that, there are conclusory allegations that Cabras' vessel was unseaworthy (para. 48) and that Cabras was in control of Barrineau's air supply.

Barrineau subsequently underwent treatment from various psychologists and psychiatrists for post-traumatic stress disorder ("PTSD") allegedly arising out of this "near drowning" incident. However, as evidenced by the report of Barrineau's expert, Dr. Janet McCullough, Barrineau's functioning was "much improved" as of June 28, 2006 which was a little over one year after the accident. As of that point in time, he was involved in boating activities and computer graphic design. Moreover, Dr. McCullough's report indicates that Barrineau had other

stressful incidents ongoing in his life at the relevant times which are outlined in her report indicating that not all of his alleged symptoms can necessarily be tied to the diving accident. A psychiatric consultant retained by Pro Marine opined that the PTSD had substantially improved as of June 28, 2006 and that further improvement was expected.

Pro Marine had insurance coverage of $100,000 in effect at the time of the accident and this was the only insurance coverage available in connection with Barrineau's claims. On August 30, 2006, an offer was made by Barrineau to settle his claims against Pro Marine and the Collards in consideration for a policy limits payment of $100,000 and that offer was accepted. Payment of the settlement sum was effectuated, a release in favor of Pro Marine and the Collards was executed, and a stipulation for dismissal of the claims against Pro Marine and the Collards was submitted to this Court, approved, and filed on October 6, 2006.

Pro Marine contends that this settlement was entered into in "good faith" pursuant to 7 CMC §4305 and, as such, that summary judgment should be entered in its favor dismissing the cross-claim of Cabras Marine.

- 4 -

## II. POINTS AND AUTHORITIES

7 CMC §4305 reads in pertinent part as follows:

<u>When a release</u> or a covenant not to sue or not to enforce judgment <u>is given in good faith to one of two or more persons liable in tort for the same injury</u> or the same wrongful death:

    (a) It does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide, but it reduces the claim against the other to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is greater; and

    (b) <u>It discharges the tortfeasor to whom it is given from all liability for contribution to any other tortfeasor.</u>

(Emphasis added).

Thus, if the settlement was entered into in "good faith", the cross-claim of Cabras should be dismissed and Pro Marine should no longer be involved in this litigation.

Significantly, 7 CMC §4305 is essentially identical to California Code of Civil Procedure §877 as it existed prior to amendments in 1987. (Addendum A). California courts interpreting the "good faith" requirement under CCP §877 have held that a number of factors are to be taken into account including a rough approximation of plaintiff's

total recovery and the settler's proportionate liability, the amount paid in settlement, a recognition that a settler should pay less in settlement than he would if he were found liable after a trial, the insurance policy limits of settling defendants, as well as the existence of collusion, fraud, or tortious conduct aimed to injure the interests of non-settling defendants. Tech-Bilt Inc. v. Woodward-Clyde & Assoc., 38 Cal.3d 488, 213 Cal.Rptr. 256, 261 (1985). As noted in Stanbaugh v. Superior Court of Sonoma County, 62 Cal.App.3d 231, 132 Cal.Rptr. 843, 848 (1976):

> [W]e opine that it would be a rare case indeed, where, as here, a joint tortfeasor who was the immediate causative agent of a claimant's injuries, who settles for the full amount of his insurance coverage, may reasonably be charged with lack of good faith under §877. And it must be noted that in such a case, all joint tortfeasors against whom a judgment is finally entered will be the beneficiaries of such a settlement, for its amount will be deducted from the claimant's damages as found by the trier of fact. (Emphasis added).

The purpose of the good faith provision in §877 was to promote an equitable sharing of costs while encouraging settlements. Tech-Bilt Inc., supra, 213 Cal.Rptr. at 259. The California courts have recognized that precision is not required. A settlement, however, must not be "grossly"

disproportionate to the settlor's fair share and this has been described as a requirement that the settlement amount be "in the ballpark". Abbott Ford Inc. v. Superior Court, 43 Cal.3d 858, 239 Cal.Rptr. 626, 636-637 (1987).

As indicated in the Sterling Affidavit, Pro Marine ran the dive operation at issue and has acknowledged responsibility for the acts giving rise to Mr. Barrineau's alleged injuries. To the extent Mr. Barrineau can even articulate some alleged basis for comparative fault on Cabras' part, it is essentially impossible at this point to predict what fault percentage may be implicated.[1] More importantly, the evidence indicates that although Mr. Barrineau sustained PTSD as a result of the incident, that condition was resolving and, at trial, Pro Marine would have been in a position to argue that appropriate damages were not all that substantial. Beyond that, Pro Marine has agreed to pay $100,000 representing its entire insurance coverage in connection with this claim which was the amount

---

[1] Frankly, it is unclear to Pro Marine why Cabras has not moved for summary judgment in its favor which, if granted, would moot the cross-claim.

demanded by Mr. Barrineau. This number is clearly "in the ballpark" of adequate compensation for the injury allegedly sustained. Under such circumstances, Pro Marine submits that this Court should properly conclude that the $100,000 settlement was entered into in "good faith".

To the extent 7 CMC §4305 only deals with contribution claims, Cabras' simple allegation in its cross-claim that it is entitled to "indemnity" will not survive judicial scrutiny. There is no allegation in the cross-claim or anywhere else in the pleadings that there is any contract between Cabras and Pro Marine which would expressly require indemnification in connection with the Barrineau claim. Moreover, nobody has alleged, including Barrineau, that Cabras Marine is vicariously liable for the admitted negligence of Pro Marine in connection with this incident. As such, there is no potential whatsoever for an indemnity recovery by Cabras and Pro Marine is entitled to judgment on the pleadings as to Cabras' "indemnity" claim. Such is due to the fact that the RESTATEMENT OF TORTS 3RD, APPORTIONMENT OF LIABILITY, §22 INDEMNITY reads as follows:

> (a) When two or more persons are or may be liable for the same harm and one of them discharges the liability of another in whole

> or part by settlement or discharge of judgment, <u>the person discharging the liability is entitled to indemnity in the amount paid to the plaintiff, plus reasonable legal expenses, if</u>:
>
> (1) <u>the imdemnitor has agreed by contract to indemnify the indemnitee, or</u>
>
> (2) <u>the indemnitee</u>
>
>   (i) <u>was not liable except vicariously for the tort of the indemnitor, or</u>
>
>   (ii) <u>was not liable except as the seller of a product supplied to the indemnitee by the indemnitor and the indemnitee was not independently culpable.</u>  (subparagraph b) a person who is otherwise entitled to recover indemnity pursuant to a contract may do so even if the party against whom indemnitee is sought would not be liable to the plaintiff.
>
> (Emphasis added).

Thus, the Restatement clearly provides that Cabras only has an indemnity right against Pro Marine if it can establish the existence of an express contract providing it with an indemnity claim or, alternatively, if it can be held vicariously liable for the negligence of Pro Marine.  There are no allegations (or facts for that matter) in this litigation to support either theory and, as such, Cabras'

indemnity claim must fail on the pleadings as a matter of law.

## CONCLUSION

For all the foregoing reasons, Cross-defendant Pro Marine Technology respectfully submits that it is entitled to a judgment on the pleadings and/or summary judgment in its favor dismissing Cabras Marine's cross-claim for indemnity and contribution with prejudice.

**RESPECTFULLY SUBMITTED** this 22 day of November, 2006.

BLAIR STERLING JOHNSON
MARTINEZ & LEON GUERRERO
A PROFESSIONAL CORPORATION
THOMAS C. STERING, CNMI BAR NO. F0127

THOMAS E. CLIFFORD
ATTORNEY AT LAW

DATED: NOVEMBER 22, 2006            BY: _____
                                        THOMAS E. CLIFFORD, CNMI BAR NO. F0210
                                        *Attorneys for Defendant and Cross Defendant Pro Marine Technology*

ATTACHMENT: ADDENDUM A

E62\73061-01
G:\WORDDOC\PLD\TCS\303-PMT'S MEMO OF P&A IN SUPP OF MTN 4 SJ
BASED -ON GOOD FAITH SETTLEMENT RE BARRINEAU V PMT.DOC

- 10 -

**§ 876**  CIVIL ACTIONS  Part 2

court correctly concluded that doctrine of implied indemnity did not apply and that case was to be decided pursuant to principles of comparative negligence. New Hampshire Ins. Co. v. Sauer (1978) 147 Cal.Rptr. 879, 83 C.A.3d 454.

Supreme court decisions on comparative negligence have created hierarchy of interests; first hierarchy is maximization of recovery to injured party for amount of injury to extent fault of others has contributed to it, while second is encouragement of settlement of injured party's claim, and third is equitable apportionment of liability among tort-feasors. Sears, Roebuck & Co. v. International Harvester Co. (1978) 147 Cal.Rptr. 262, 82 C.A.3d 492.

Assuming there had been no settlement, where motorcyclist sued driver and owner of automobile and state for damages as result of collision between motorcycle and automobile on state highway and motorcyclist's negligence was found to be responsible for 33.3 percent of damages, his damages would have to be reduced in the proportion that his responsibility for injuries bore to the whole; he could recover only those damages not occasioned by his own negligence. Jaramillo v. State (1978) 146 Cal.Rptr. 823, 81 C.A.3d 968.

Under common-law equitable indemnity doctrine, as modified by California supreme court in American Motorcycle Assn. v. Superior Court (1978) 143 Cal.Rptr. 692, 574 P.2d 763, 20 Cal.3d 578, liability among joint tort-feasors may be apportioned on comparative fault basis; such apportionment may appropriately be effected between strictly liable defendant and negligent defendant, as well as between multiple negligent defendants. Safeway Stores Inc. v. Nest-Kart (1978) 146 Cal.Rptr. 550, 579 P.2d 441, 21 C.3d 322.

**4. Instructions**

Where assistant surgeon, defendant in medical malpractice action, requested instruction to effect that if court found that plaintiff was entitled to recover against more than one defendant, jury would have to return a verdict in a single sum against the defendants that they found to be liable, and where assistant surgeon did not request an instruction to jury that it must apportion any damage award among defendants according to their respective fault, assistant surgeon was not entitled to challenge requested instructions now or to claim that trial court committed reversible error in refusing to instruct jury on apportionment. Jines v. Abarbanel (1978) 143 Cal.Rptr. 818, 77 C.A.3d 702.

**5. Redetermination after adoption of equitable indemnity doctrine**

Where court and parties knew comparative negligence had been adopted and knew of invaluable assistance which could be rendered from special verdicts but replied in the negative when jury asked if it should apportion negligence among defendants in wrongful death action following four-week trial, and where retrial would disrupt administration of justice, appellate court would not order retrial, on basis of intervening adoption of equitable indemnity doctrine. Silveira v. Imperial Irr. Dist. (1978) 149 Cal.Rptr. 653, 85 C.A.3d 705.

**§ 877.  Release of one or more joint tortfeasors; effect upon liability of others**

Where a release, dismissal with or without prejudice, or a covenant not to sue or not to enforce judgment is given in good faith before verdict or judgment to one or more of a number of tortfeasors claimed to be liable for the same tort—

(a) It shall not discharge any other such tortfeasor from liability unless its terms so provide, but it shall reduce the claims against the others in the amount stipulated by the release, the dismissal or the covenant, or in the amount of the consideration paid for it whichever is the greater; and

(b) It shall discharge the tortfeasor to whom it is given from all liability for any contribution to any other tortfeasors.

(Added by Stats.1957, c. 1700, p. 3077, § 1.)

ADDENDUM A