# EXHIBIT

# "D"

**William M. Fitzgerald, Esq.**
LAW OFFICE OF WILLIAM M. FITZGERALD
1st Floor, Macaranas Building
P.O. Box 909
Saipan, MP 96950
Telephone (670) 234-7241
Facsimile (670) 234-7530

**Bruce Berline, Esq.**
**Law Office of Bruce Berline**
1st Floor, Macaranas Building
P.O. Box 5682 CHRB
Garapan, Saipan, MP 96950
Telephone: (670) 233-3663
Facsimile: (670) 233-5262

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE

COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| JOHN BRADY BARRINEAU, | CV NO. 05-00028 |
| Plaintiff, | |
| v. | PLAINTIFF'S RESPONSES TO DEFENDANT CABRAS MARINE CORPORATION FIRST REQUEST FOR ANSWERS TO INTERROGATORIES TO PLAINTIFF |
| PROMARINE TECHNOLOGY, and CABRAS MARINE CORPORATION, | |
| Defendants. | |

**COMES NOW** Plaintiff John Brady Barrineau ("Plaintiff"), by and through his counsel, Bruce Berline, Esq., to respond to Defendant Cabras Marine Corporation First Request for Answers to Interrogatories to Plaintiff.

Plaintiff has not fully completed his investigation of the facts relating to this action, has not completed analysis of existing discovery in this action, and has not completed preparation for trial. It is anticipated that further discovery, independent investigation, legal research and analysis of existing discovery may well supply additional facts and add meaning to the known facts, as well as establish

RECEIVED FROM
CARLSMITH BALL SAIPAN
DATE: 04-17-06   TIME: 9:45am

1  entirely new factual contentions and legal contentions, all of which may lead to substantial additions to,
2  changes in, modification to, or variations from the responses and objections set forth herein.
3       The following responses and objections are given without prejudice to Plaintiff's right to produce
4  evidence of any subsequently discovered facts which he may later recall or any subsequently discovered
5  documents.

## OBJECTIONS

7       To the extent that any Interrogatory may be construed as calling for information that is subject
8  to a claim of privilege including, but not limited to, the attorney-client privilege, the work product
9  doctrine or any constitutional, statutory or regulatory proscription against disclosure, Plaintiff hereby
10 assert that doctrine or privilege and objects to the Interrogatory on that basis. In addition, the inadvertent
11 disclosure of material protected by such privilege(s) or doctrine(s) shall not constitute a waiver of the
12 applicable privilege(s) or doctrine(s) either as to those material inadvertently produced or as to any other
13 material.

14      Plaintiffs object to the Interrogatories as overbroad and unduly burdensome to the extent they
15 seek information concerning activities unrelated to the events at issue in this case.

16      Plaintiffs object to the Definitions and Instructions to the extent that they seek to impose
17 obligations which exceed or differ from those imposed by the Federal Rules of Civil Procedure.

18      Plaintiff objects to the Interrogatories as overbroad and unduly burdensome to the extent they
19 seek information concerning activities unrelated to the events at issue in this case and/or in violation of
20 the above privileges.

21      Plaintiff's responses herein are not intended to waive or prejudice any objection Plaintiff might
22 assert as to the admissibility relevancy or discoverability of any response or document or category of
23 responses or documents.

24      Incorporating the above objections to each response and without waiving the above, Plaintiff
25 responds and objects to Defendant Pro Marine Technology's First Set of Interrogatories Propounded
26 to Plaintiff as follows:

**RESPONSES TO INTERROGATORIES**

INTERROGATORY NO. 1: Provide the following information:

a. full name
b. date of birth
c. social security number
d. current residence address

RESPONSE TO INTERROGATORY NO. 1:

a. John Brady Barrineau
b. 11/22/70
c. 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
d. PMB 53 BOX 10001, SAIPAN MP 96950

INTERROGATORY NO. 2: State the name and address of each employer you have had during the period 1996 through the present. For each employer state when you were employed, describe your job duties and state your rate of pay.

RESPONSE TO INTERROGATORY NO. 2. See Plaintiff's resume included in Plaintiff's document production.

1996-1997: Santa Barbara Harbor Patrol, Santa Barbara, CA.
Boat Crew-Approx: $12.00 per hour.

1998- YMCA Santa Barbara, CA
Front Desk Help-Approx: $8.00 per hour.

1998-1999 Stolt Comex Seaway, Oxnard, CA.
Diver/Tender, Hyperbaric Chamber Operator some ROV work-Approx: $15.00 per hour.

1999-2000 Liquid Engineering Corporation, Billings, MT.
Diver/Tender: Industrial Inland Diving. Salary Based on commission.

2000-2001 Underwater Technology Services, Ventura, CA.
Diver/Tender-Approx: $15.00 per hour.

2001-2002 Coast Diving Service, San Pedro, CA.
Diver/Tender/Digital Imaging, ship security diving-Approx: Salary, $4,000 per month.

2002-2005 Stingray Divers Saipan
Diver/Commercial Diver/Dive Instructor: approx. $40,000.00 to $50,0000.00 per year.

2005-2005 ProMarine Technology, Guam
Diver/Tender-Approx: $25.00 per hour.

2006-Present Self Employed, freelance graphic design
Web design-Approx: $4.00 per hour.

INTERROGATORY NO. 3: Identify each witness known to you who has any knowledge -- eye-witness or otherwise -- relating to the incident, your alleged injuries and claimed damages.

RESPONSE TO INTERROGATORY NO. 3.

1. Plaintiff John Brady Barrineau. c/o Bruce Berline, Esq.

2. Julie Sarich, Plaintiff's wife,

3. Ben Matanabe - PMT employee, dive tender.

4. Kenneth Collard - PMT president, diver.

5. Carey B. Rose - PMT employee, supervisor.

6. Chris Shelton - PMT employee, diver/tender.

7. Vance Eflin - PMT employee, diver/tender.

8. Conel D. Jonah - PMT employee, diver/tender.

9. Doctor Pamela J. Hofer - Hofer Clinic, P.O. Box 5208, UOG Station, Mangilao, Guam, 96923,(671) 734-0382.

10. Doctor Janet McCullough, 323-32211, P.O. Box 500745 Saipan, CNMI.

11. Doctor William Hay, CNMI Department of Public Health, Community Guidance Center, P.O. Box 500409 CK, Saipan, MP 96950, 323-6560.

12. Doctor Leon Hart, doctor at Commonwealth Health Center, located in Garapan, Saipan, CNMI.

13. Dr. Vincente S. Aldan, Saipan Health Clinic, Saipan, CNMI

14. Dr. Tony Stearns, Marianas Medical Clinic, Saipan, CNMI

15. Dr. Drombouski, Harmon Doctor's Clinic,

16. Unknown doctor at Guam Memorial Hospital.

17. Employees of the U.S. Navy's recompression chamber located in Guam

18. Employees of Cabras Marine, names unknown at this time, who were on board the M/V Cajun at the time Plaintiff was injured.

19. Employees of the United States Coast Guard, including the employees of the Marine Safety Office, specifically, without limitation, Lt. Donna Leoce and Lt. Delgado.

20. Chie N. Collard - Treasurer/Secretary/Business Manager of PMT.

INTERROGATORY NO. 4: Provide the name, address and employer (or as much information as you know) for everyone on the vessel at the time of the accident. (This interrogatory applies to employees of ProMarine and Cabras Marine).

RESPONSE TO INTERROGATORY NO. 4.

1. Plaintiff John Brady Barrineau. c/o Bruce Berline, Esq.

2. Ben Matanabe - PMT employee, dive tender.

3. Kenneth Collard - PMT president, diver.

4. Carey B. Rose - PMT employee, supervisor.

5. Chris Shelton - PMT employee, diver/tender.

6. Vance Eflin - PMT employee, diver/tender.

7. Conel D. Jonah - PMT employee, diver/tender.

8. Bob Laurante - Captain of the M/V Cajun

INTERROGATORY NO. 5: Describe and how or why the accident occurred. For example, if equipment malfunctioned or for some reason stopped working, describe such as best you can.

RESPONSE TO INTERROGATORY NO. 5: Objection: this interrogatory calls for expert opinion to be fully answered. Without waiving such objection, Plaintiff states as follows: Kenneth Collard, the

president of Pro Marine Technology ("PMT"), intentionally turned off an air supply valve which directly controlled Plaintiff's only source of air while he was under water.

Moreover, the air supply valve which Mr. Collard turned off was not properly marked or labeled identifying it as an air valve controlling a diver's air supply.

Finally, the air valve which Mr. Collard turned off was not properly secured so as to prevent any one such as Mr. Collard from turning the valve so as to stop the flow of air to the a diver.

PMT and it employees and the employees of Cabras Marine Corporation should have had the proper training to respond to diving emergencies such as the incident which occurred on May 22nd 2005 in Apra Harbor Guam.

PMT, it's employees and Cabras Marine Corporation working topside on the M/V Cajun, upon knowing that Plaintiff had lost his air supply, should have initiated lost diver protocols, such as: call 911 and the US Coast Guard as well as prepare for transport to a hyper baric chamber and hospital for observation by doctor. Upon retrieving a diver who PMT and Cabras Marine Corporation and its employees knows lost air while operating a heavy hydraulic scrubber under a ship, and was dragged down, had made a rapid ascent to the surface, may have lost consciousness due to lack of oxygen, and suffered head trauma and may be, among other things, traumatized, hypoxic, anoxic or suffer from baro-trauma or otherwise seriously injured PMT and Cabras Marine Corporation should have taken him to a hospital or doctor immediately.

INTERROGATORY NO. 6. List all facts you have to support your allegation that Cabras Marine did or failed to do certain things which in any way caused or contributed to the accident.

RESPONSE TO INTERROGATORY NO. 6. Objection: this interrogatory calls for expert opinion to be fully answered. Moreover, this interrogatory is premature as discovery has yet to be completed in this matter. Without waiving such objections, Plaintiff states as follows: Cabras Marine owned the M/V Cajun. The M/V Cajun served as transportation to the work site for Plaintiff and all other personnel.

The M/V Cajun also served as a dive platform for the job. The equipment aboard the Cajun was unseaworthy as it was not suitable for the task for which it was used. Moreover, the crew of the M/V Cajun was improperly trained to support the diving operation. See response to interrogatory no. 5.

INTERROGATORY NO. 7(A). Provide your description of what you believe Cabras Marine could or should have done to prevent the accident.

RESPONSE TO INTERROGATORY NO. 7(A): See response to interrogatory nos. 5 and 6 including objections. Cabras Marine should have ensured that PMT's employees were all medically fit for duty and had the proper training to carry out their duties as commercial divers and tenders. Cabras Marine should have not placed faulty equipment, which was used for the diving operations, on the M/V Cajun. Cabras Marine should have inspected the equipment on board the M/V Cajun to ensure that it was seaworthy. Cabras Marine should have intervened, called the Coast Guard, 911 and/or taken Plaintiff to the hospital.

INTERROGATORY NO. 7(B)

B.  Provide your description of what you believe Pro Marine could or should have done to prevent the accident.

RESPONSE TO INTERROGATORY NO. 7(B): See response to interrogatory nos. 5 and 6 including objections. Without waiving such objection and to the extent that Plaintiff may answer independently of such expert opinion, Plaintiff states as follows: Kenneth Collard, the president of Pro Marine Technology ("PMT"), intentionally turned off an air supply valve which directly controlled Plaintiff's only source of air while he was under water.

Moreover, the air supply valve which Mr. Collard turned off was not properly marked or labeled identifying it as an air valve controlling a diver's air supply.

Finally, the air valve which Mr. Collard turned off was not properly secured so as to prevent any one such as Mr. Collard from turning the valve so as to stop the flow of air to the a diver.

PMT and it employees should have had the proper training to respond to diving emergencies such as the incident which occurred on May 22nd 2005 in Apra Harbor Guam. PMT's employees working topside should have the knowledge and training to ensure that the diver is constantly tended to and monitored while in the water. Such monitoring and tending include without limitation, that the diver's depth is known at all times, constant monitoring of the diver's communications and informing diver of important procedures topside, such as the turning off of an air supply valve, and that the standby diver is ready to go. It is Plaintiff's belief that he was not constantly and properly tended to and monitored while he was underwater.

PMT, it's employees and all other company personnel working topside, upon knowing that Plaintiff had lost his air supply, should have initiated lost diver protocols, such as: inform the vessel captain of the incident, call 911 and the US Coast Guard as well as prepare for transport to a hyper baric chamber and hospital for observation by doctor. Upon retrieving a diver who PMT knows lost air while operating a heavy hydraulic scrubber under a ship, and was dragged down, had made a rapid ascent to the surface, may have lost consciousness due to lack of oxygen, and suffered head trauma and may be, among other things, traumatized, hypoxic, anoxic or suffer from baro-trauma or otherwise seriously injured PMT should have taken him to a hospital or doctor immediately.

INTERROGATORY NO. 8. You allege that Cabras Marine was negligent. List all the facts which you believe show negligence on the part of Cabras Marine.

RESPONSE TO INTERROGATORY NO. 8. Objection: this interrogatory calls for expert opinion to be fully answered. Moreover, this interrogatory is premature as discovery has yet to be completed in this matter. Without waiving such objections, Plaintiff states as follows: See responses to interrogatory no. 5, 6 and 7.

INTERROGATORY NO. 9. You allege that Cabras Marine was negligent. List all unseaworthy conditions which existed at the time in question.

RESPONSE TO INTERROGATORY NO. 9. Objection: this interrogatory calls for expert opinion to be fully answered. Moreover, this interrogatory is premature as discovery has yet to be completed in this matter. Without waiving such objections, Plaintiff states as follows: See responses to interrogatory no. 5,6 and 7.

INTERROGATORY NO 10: With regard to Paragraph 17 of the Complaint, describe the arrangements, to the extent known by you, by which Pro Marine "used the M/V Cajun to complete the M/V Hauge cleaning"

RESPONSE TO INTERROGATORY NO. 10. At this time Plaintiff believes that Pro Marine hired the M/V Cajun to serve as transportation for all the equipment and personnel needed to complete the job of cleaning the M/V Hauge. Furthermore, the M/V Cajun served as a dive platform for the divers to work from.

INTERROGATORY NO 11: With regard to Paragraph 18 of the Complaint, identify the owner of "all of the equipment necessary to complete the underwater mission of scrubbing the hull of the M/V Hauge, including the air supply used for Plaintiff Barrineau's dive."

RESPONSE TO INTERROGATORY NO. 11. At this time, it is believed that Pro Marine and Cabras Marine owned some of the necessary equipment needed to complete the mission.

INTERROGATORY NO 12: With regard to Paragraph 18 of the Complaint, was Pro Marine or Cabras Marine responsible for maintaining and servicing "all of the equipment necessary to complete the underwater mission of scrubbing the hull of the M/V Hauge, including the air supply used for Plaintiff Barrineau's dive."?

RESPONSE TO INTERROGATORY NO. 12. At this time, it is believed that both Pro Marine and Cabras Marine was responsible for maintaining and servicing the necessary equipment needed to complete the mission as the dive needed both the M/V Cajun and all of the equipment on board to fulfill its duty.

INTERROGATORY NO 13: With regard to Paragraph 18 of the Complaint, did Pro Marine or Cabras Marine operate "all of the equipment necessary to complete the underwater mission of scrubbing the hull of the M/V Hauge, including the air supply used for Plaintiff Barrineau's dive."?

RESPONSE TO INTERROGATORY NO. 13. At this time, it is believed that both Pro Marine and Cabras Marine each operated different equipment, including the M/V Cajun itself, which was necessary to complete the mission.

INTERROGATORY NO 14: With regard to Paragraph 19 of the Complaint, did Pro Marine or Cabras Marine own "the dive compressor aboard the M/V Cajun."

RESPONSE TO INTERROGATORY NO. 14. Plaintiff believes at this time that Pro Marine owned the dive compressor at issue in the complaint.

INTERROGATORY NO 15: With regard to Paragraph 19 of the Complaint, was "the dive compressor aboard the M/V Cajun." operated by an employee of Pro Marine or an employee of Cabras Marine.

RESPONSE TO INTERROGATORY NO. 15. An employee of Pro Marine shut off Plaintiff's air supply but Plaintiff is uncertain whether an employee of Cabras Marine operated the dive compressor aboard the M/V Cajun at this time.

INTERROGATORY NO 16: With regard to Paragraph 19 of the Complaint, did Pro Marine or Cabras Marine service or maintain "the dive compressor aboard the M/V Cajun."

RESPONSE TO INTERROGATORY NO. 16. At this time, Plaintiff does not have any information which indicates that an employee of Cabras Marine maintained or serviced the dive compressor aboard the M/V Cajun.

INTERROGATORY NO 17: With regard to Paragraph 21 of the Complaint, was an employee of Pro Marine or an employee of Cabras Marine responsible for maintaining "Plaintiff Barrineau's air supply" during the hull scrubbing.

RESPONSE TO INTERROGATORY NO. 17. At this time, Plaintiff believes that Pro Marine was responsible for maintaining "Plaintiff Barrineau's air supply" during the hull scrubbing.

INTERROGATORY NO 18: With regard to Paragraph 26 of the Complaint, was Plaintiff Barrineau an employee of Pro Marine or an employee of Cabras Marine when Barrineau was "acting within the course and scope of his employment and performing his required duties."?

RESPONSE TO INTERROGATORY NO. 18. Plaintiff was an employee of Pro Marine.

INTERROGATORY NO 19: With regard to Paragraph 27 of the Complaint, was Plaintiff Barrineau an employee of Pro Marine or an employee of Cabras Marine when Barrineau "was engaged in the traditional work of a seaman, and/or was doing the M/V Cajun's work. . ."?

RESPONSE TO INTERROGATORY NO. 19. Plaintiff was an employee of Pro Marine.

INTERROGATORY NO 20: With regard to Paragraph 43 of the Complaint, describe in detail the "unseaworthy condition" which rendered the vessel, its crew, equipment, or gear, unfit for the intended purpose."

RESPONSE TO INTERROGATORY NO. 20. The M/V Cajun was a fundamental and critical element in successfully completing the mission at hand. The M/V Cajun was hired to transport the dive personnel and equipment to the M/V Hauge which was moored at sea. Further the M/V Cajun served as a platform to hold the necessary equipment needed to successfully clean the M/V Hauge hull once it arrived at the M/V Hauge. The equipment aboard the M/V Cajun, specifically the equipment supplying Plaintiff's air was aboard the M/V Cajun was unseaworthy. This equipment was unseaworthy because certain valves controlling Plaintiff's air supply were not properly marked or secured in a way to prevent someone from turning the air supply off while Plaintiff was underwater. Furthermore, the personnel aboard the M/V Cajun was either inadequate or incompetent as they were not properly trained to handle diving emergencies or failed to properly handle the emergency once it occurred. Moreover, the personnel aboard the M/V failed to notify the proper authorities and transport Plaintiff to the

hospital. See also response to interrogatory no. 5,6 and 7.

INTERROGATORY NO 21: With regard to Paragraph 44 of the Complaint, describe how each unseaworthy condition referred to in Paragraph 43 of the Complaint and described in your answer to Interrogatory No. 20, caused or contributed to cause your air supply to fail.

RESPONSE TO INTERROGATORY NO. 21. As far as contributing or causing Plaintiff's air supply to fail, the air supply apparatus was on the M/V Cajun. The unseaworthy air supply apparatus directly controlled Plaintiff's air supply. Had the valve been properly marked or been properly secured so as prevent someone from turning it off, Plaintiff's air supply would not have been cut off and he would not have been injured.

INTERROGATORY NO 22: With regard to Paragraphs 49 and 50 of the Complaint, since you were not employed by Cabras Marine at the time of he incident, what is your basis of your claim that Cabras is obligated to pay maintenance and cure?

RESPONSE TO INTERROGATORY NO. 22. At this time, Plaintiff does not believe that Cabras is responsible for maintenance or cure.

INTERROGATORY NO 23(A). With regard to Paragraph 53 of the Complaint describe the "certain duties of care" Pro Marine owed Plaintiff.

RESPONSE TO INTERROGATORY NO. 23(A). Objection, this interrogatory calls for a legal conclusion.

RESPONSE TO INTERROGATORY NO 23(B). With regard to Paragraph 53 of the Complaint describe the "certain duties of care" Cabras Marine owed Plaintiff.

RESPONSE TO INTERROGATORY NO. 23(B). Objection, this interrogatory calls for a legal conclusion.

INTERROGATORY NO 24. With regard to Paragraph 58 of the Complaint, identify with detail sufficient for book reference each "various rule, regulation, code and/or statute" violated by Cabras

Marine. In other words, provide citations to each ""various rule, regulation, code and/or statute" violated by Cabras Marine.

RESPONSE TO INTERROGATORY NO. 24. At this time Plaintiff states as follows: U.S. Navy Diving Manual 6-8.3, 6-12, 8-7.2.1

INTERROGATORY NO 25. With regard to Paragraph 59 of the Complaint, identify with detail sufficient for book reference each "the type and kind of harm which the above various rules, regulations, codes and/or statutes were and are intended to prevent." In other words provide citations or references to each "various rule regulation code and statute."

RESPONSE TO INTERROGATORY NO. 25. This interrogatory calls for a legal conclusion. Without waiving such objection, Plaintiff is presently unaware of any such citations other than those provided in the above response.

INTERROGATORY NO 26. With regard to Paragraph 61 of the Complaint, describe each action of Cabras Marine, which you claim was so "outrageous, callous, reprehensible, malicious, and/or in reckless disregard of the safety and well being of Plaintiff" so as to warrant punitive damages against Cabras Marine.

RESPONSE TO INTERROGATORY NO. 26. With the limited discovery available at this time, Plaintiff believes at this time that only Pro Marine is guilty of such actions.

INTERROGATORY NO 27. With regard to Paragraph 63 of the Complaint, state your reasons for contending Cabras Marine had "exclusive control of plaintiff's air supply and/or the controls for Plaintiff's sir supply".

RESPONSE TO INTERROGATORY NO. 27. With the limited discovery available at this time, Plaintiff cannot answer this question.

INTERROGATORY NO 28. State the full name, complete address, and phone number for all doctors and health care providers, including psychologists and psychiatrists, who have treated or examined you

in connection with the injuries alleged in your Complaint.

RESPONSE TO INTERROGATORY NO. 28.

1. Doctor Pamela J. Hofer - Hofer Clinic, P.O. Box 5208, UOG Station, Mangilao, Guam, 96923, (671) 734-0382.
2. Doctor Janet McCullough, 323-3211, P.O. Box 500745 Saipan, CNMI.
3. Doctor William Hay, CNMI Department of Public Health, Community Guidance Center, P.O. Box 500409 CK, Saipan, MP 96950, 323-6560.
4. Doctor Leon Hart, doctor at Commonwealth Health Center, P.O Box 500409 Garapan, Saipan, CNMI, 234-8950
5. Dr. Vincente S. Aldan, Saipan Health Clinic, Saipan, CNMI
6. Dr. Tony Stearns, Marianas Medical Clinic, P.O. Box 50006 CHRB, Saipan, CNMI 234-3926
7. Dr. Drombouski, Harmon Doctor's Clinic, (671) 637-4179, 2214 Route 16, Harmon, Guam 96912. Additional information should be available after Plaintiff receives his medical records from Harmon Doctor's Clinic
8. An unknown doctor at Guam Memorial Hospital, 850 Governor Carlos G. Camacho Road, Tamuning, Guam 96913, (671) 647-2939. This information should be available after Plaintiff receives his medical records from Guam Memorial Hospital.

INTERROGATORY NO 29. Identify any doctor listed in your answer to Interrogatory No. 11 recommended by an attorney.

RESPONSE TO INTERROGATORY NO. 29. There are no doctors listed in Plaintiff's answer to Interrogatory no. 11. Assuming the reference to no. 11 is in error and was meant to reference no. 28, the answer is none.

INTERROGATORY NO 30. If you ever previously sustained an injury similar to the injury claimed here, describe the injury, and the circumstances under which it occurred, give the date it happened, and provide the name and address of each doctor and/or health care provider you sought treatment from.

RESPONSE TO INTERROGATORY NO. 30. Plaintiff has never sustained a similar injury.

INTERROGATORY NO. 31: If you claim you have not fully recovered from the injury, provide the name of each doctor and health care provider whom you believe will support your claim.

RESPONSE TO INTERROGATORY NO. 31. At this time, Plaintiff believes that the following doctors will support Plaintiff's claim : Pamela J. Hofer, Janet McCullough, William Hay, Leon Hart,

Vincente S. Aldan, and Tony Stearns.

INTERROGATORY NO. 32: If you are working at this time, identify the employer, describe the job you do and state the pay.

RESPONSE TO INTERROGATORY NO. 32. Currently, Plaintiff is working for himself, fishing on his fishing boat. Plaintiff's income varies between 500 to 800 dollars per month.

INTERROGATORY NOS. 33 - 41, inclusive: Plaintiff objects that Defendant has well exceeded the allowable number of interrogatories as set forth in LR 16.2CJ(c)(1)(b).

Dated this 5th day of April, 2006.

_____
BRUCE BERLINE
Attorney for Plaintiff

VERIFICATION

I, John Brady Barrineau, having read the above responses contained above do hereby declare that the foregoing is true and correct to my own knowledge and that I have executed this document entitled Plaintiff's Responses to Defendant Cabras Marine Corporation First Request for Answers to Interrogatories to Plaintiff on this ____ day of April, 2006 at Saipan, CNMI.

_____
JOHN BRADY BARRINEAU