1   **William M. Fitzgerald, Esq.**
    LAW OFFICES OF WILLIAM M. FITZGERALD
2   2nd Fl. Macaranas Bldg., Garapan Beach Road
    P.O. Box 500909
3   Saipan, MP 96950
    Telephone:    (670) 234-7241
4   Fax:          (670) 234-7530

5
    **Bruce Berline, Esq.**
6   LAW OFFICE OF BRUCE BERLINE
    2nd Fl. Macaranas Bldg., Garapan Beach Road
7   P.O. Box 5682 CHRB
    Saipan, MP 96950
8   Telephone:    (670) 233-3663
    Fax:          (670) 233-5262
9

10  Attorneys for Plaintiff

11

12

13              UNITED STATES DISTRICT COURT
                        FOR THE
14              NORTHERN MARIANA ISLANDS

15

16

17  JOHN BRADY BARRINEAU,              CIVIL ACTION NO. CV05-0028

18                  Plaintiff,

19          v.                         **PLAINTIFF'S    OPPOSITION    TO
                                       DEFENDANT'S      MOTION      FOR
20  PROMARINE TECHNOLOGY and CABRAS    SUMMARY  JUDGMENT**
    MARINE CORPORATION,
21                                     Date:   May 10, 2007
22                  Defendants.        Time:   9:00 a.m.
                                       Judge:  Alex R. Munson
23

24

25

26

27

28

                              1

# INTRODUCTION

Defendant Cabras Marine Corporation, in its Introduction and Background sections has generally given an accurate description of the events surrounding the accident. Its conclusion, however, that Cabras had absolutely no role in causing what happened and was under no duty to prevent it is wrong — unsupported by the facts or the law.

Cabras attempts to support its position by describing the roll of the M/V Cajun solely "as a water taxi to transport PMT employees and their diving equipment. . ." (Deft's Memo. at 3). This is a gross inaccuracy. The Cajun provided the platform for the divers and their equipment, necessary to accomplish the mission and the purpose for which the Cajun was used. (Plaintiff's memo p. 10, citing Collard depo.).

It is true that the action of PMT president Collard, described in the Background as turning off the wrong valve, caused Mr. Barrineau's air supply to be cut. He said this happened because the "problem laid up in the connection of the masks to the umbilical hoses." (Deft's Memo. at pages 6-7). This mistake regarding the connection was directly caused by the congested condition of the Cajun's deck (Plaintiff's memo p. 11, citing Collard depo.).

Defendant continues to confuse the issue, preventing a clear understanding of the facts by stating:

> On each of the four and a half days in which Cabras transported PMT to the Hauge to conduct the cleaning operations, Cabras had no role or responsibility other than shuttling PMT between the dock and the Hauge, and securing the Cajun to the Hauge so that PMT could carry out its diving operations. (emphasis added).

(Deft's Memo. at 7).

The conclusion that Cabras was simply a water taxi is belied by both the facts and the law. The Cajun's purpose was not simply to shuttle persons, but rather to provide the platform necessary for divers and their equipment to perform their mission. (Plaintiff's memo p. 10, citing Collard depo.).

As such the law requires that the Cajun be reasonably fit for its intended use. While the Cajun may have been reasonably fit for use as a water taxi, as testimony elicited by Cabras Marine's attorney demonstrates, it was not fit to be safely used as a dive platform. (Plaintiff's Plaintiff's memo p. 11, citing Collard depo.).

Defendant's attempt to persuade the Court that the Cajun's purpose was simply to supply water taxi service unfairly and improperly impedes the process of correctly deciding this case.

## SUMMARY OF ARGUMENT

When a party without the burden of proof at trial files a motion for summary judgment it must present to the court evidence negating Plaintiff's ability to prove his case. *Celotex v. Catrett*, 106 S.Ct. 2548 (1986). There are four elements to an unseaworthiness cause of action which plaintiff must prove at trial (Plaintiff's memo p. 5). Under *Celotex* and its progeny, defendant Cabras Marine must present or point to evidence in the record, which affirmatively shows that it will be impossible for plaintiff to do this. Cabras did not follow the *Celotex* procedure, but instead simply argued that because there was no factual dispute that Plaintiff was not an employee of Cabras, and a PMT employee admitted turning off Mr. Barrineau's air, Cabras has no responsibility.

This failure to follow proper procedure, that is the failure to negate plaintiff's ability to prove his case at trial, itself is sufficient to deny Defendant Cabras Marine the relief it is requesting. (Defendant's failure to follow the *Celotex* decision is compounded by its failure to comply with LR 56.1, which requires concise separately numbered paragraphs with citation to the record setting forth the material facts that are not in dispute.)

This opposition has gone further, however, and presents deposition testimony showing that the cramped condition of the Cajun's deck caused the umbilical air hoses to be mixed up

3

resulting in Mr. Barrineau's air being turned off by mistake. (Plaintiff's memo p. 11).

Additionally, Mr. Barrineau has shown that PMT's equipment, which was loaded onto the Cajun by Cabras Marine's employees using Cabras' crane, was defective. The quarter turn air valve that directly controlled Barrineau's air supply was not labeled nor incorporated any type of physical restraint which would have prevented the air being turned off. (Plaintiff's memo p. 13).

Plaintiff also presents controlling case law, which holds that a contractor's misuse of a vessel, its equipment, etc. making it unseaworthy and causing injury does not insulate a vessel owner from liability. To the contrary, an unseaworthy condition caused by a contractor renders the vessel's owner liable. (Plaintiff's Memo p. 12).

## DEFENDANT FAILED TO FOLLOW PROPER SUMMARY JUDGMENT PROCEDURE MANDATED BY *CELOTEX* AND ITS PROGENY

Cabras's pithy standard for summary judgment (Deft's Memo p. 8) is undoubtedly correct; however, it provides no assistance to the court or counsel regarding the practical application of Rule 56 to this case. More helpful is an examination of *Celotex v. Catrett*, 106 S.Ct. 2548 (1986), and its progeny. *Celotex* stands for the proposition that a party moving for summary judgment must clearly point out to the court its basis for the motion.

> Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 3548, 91 L.Ed. 2d 265 (1986).

Cabras has informed the court that the basis of the motion is that Plaintiff Barrineau was not an employee of Cabras and the accident occurred solely because of the actions of Kenneth Collard, an employee of PMT, and without the involvement of Cabras.

4

As will be more fully explained further on, this is insufficient to support summary judgment; rather the moving party must show the court that it is impossible for the plaintiff to prove his claims. Plaintiff has made several different claims in his complaint and defendant must negate plaintiff's ability to prove those claims at trial in order to be entitled to summary judgment. In order for the plaintiff to prevail on his claim of unseaworthiness, he must establish at the time of trial the following:

1.    The warranty of seaworthiness extended to him and his duties.

2.    His injury was caused by a piece of the ship's equipment or an appurtenant appliance.

3.    The equipment used was not reasonably fit for its intended use.

4.    The unseaworthiness condition proximately caused his injuries.

*Ribitzki v. Canmar Reading & Bates, Ltd. Partnership*, 111 F.3d 658, 665(9th Cir. 1997).

The appropriate procedure under *Celotex* is for the Defendant to address each of the four requisites and point the Court to references to the record demonstrating that Plaintiff will not be able to prove his case.

Addressing each of the elements that Plaintiff must prove at trial, it is obvious that Cabras Marine has failed to negate Mr. Barrineau's ability to establish these elements.

Justice White, in his concurring *Celotex* opinion, explained, "the plaintiff need not initiate any discovery or reveal his witnesses unless required by the discovery rules to do so". *Id.* at p. 2555. In *Celotex*, the defendant had propounded interrogatories demanding the basis for the plaintiff's case and the names of the witnesses that would support this evidence. *Celotex*, in moving for summary judgment relied upon the answers to these interrogatories noting "that respondent had failed to identify, in answering interrogatories specifically requesting such information, any witnesses who could testify about the decedent's exposure to petitioner's

1    asbestos products." *Id*. at 2551.

2    Here, there were no interrogatories - no demands by defendant to name witnesses or

3    identify evidence on the seaworthiness issue.  Justice White again explains:

4
5
6
> "Of course, he must respond if required to do so; but he
> need not also depose his witnesses or obtain their affidavits
> to defeat a summary judgment motion asserting only that he
> has failed to produce any support for his case".

7    *Id*. at 2555.

8    *Celotex* stands for the proposition that a party moving for summary judgment is not

9    required to come forward with his own affidavit or evidence but may use evidence already in the

10   record to show that it is impossible for the non-moving party to meet its burden at trial. It also

11   clearly stands for the proposition that the moving party must affirmatively negate the claims of

12   the non-moving party.

13

14   Failing to follow the *Celotex* procedure dooms defendant's summary judgment effort.  The

15   *Celotex* opinions of Justices Rehnquist, White and Brennan fully explain the law and require

16   denial of the motion.

17

| | | |
|---|---|---|
| Rehnquist | - | Inform the District Court of the basis for the motion. *Id*. at 2553. |
| | - | Point out to the District court that there is an absence of evidence to support the non moving party's case. *Id*. at 2554. |
| White | - | It is not enough to move for summary judgment without supporting the motion in any way or with a conclusory assertion that the plaintiff has no evidence to prove his case.  *Id*. at 2555. |
| | - | It is the defendant's task to negate if he can the claimed basis for the suit. *Id*. at 2555. |
| Brennan | - | Moving party must affirmatively show the absence of evidence in the record. *Id*. at 2557. |
| | - | Moving party must affirmatively demonstrate that there is no evidence in the record to support a judgment for the non-moving party.  *Id*. at 2557. |

6

1   Where is the evidence in the record that the warranty of unseaworthiness does not apply to

2   Mr. Barrineau?  There is none; Cabras Marine makes no attempt to dispute this.  It is admitted

3   that Plaintiff is not an employee of Cabras.  This is irrelevant.  A vessel owner's duty is not

4   limited to its employees.  In *Ribitzki v. Canmar Reading & Bates, Ltd. Partnership*, 111 F.3d 658

5

6   (9th Cir. 1997), the Ninth Circuit found the vessel owner liable for an unseaworthy condition

7   causing injury to a non-employee.  Defendant has not and cannot produce a case holding that a

8   vessel owner owes no duty to a non-employee.

9   Likewise, the Defendant has failed to present evidence that Plaintiff would be unable to

10  prove the other three elements of an unseaworthiness claim; that his injury was caused by the

11  ship's equipment; that the ship was not reasonably fit for its intended use; and that the

12  unseaworthy condition proximately caused his injuries.

13

14  Defendant's reliance solely on the admitted fact that PMT's employee turned the air valve

15  off and its unsupported conclusion's that Cabras Marine had nothing to do with the accident do

16  not meet the *Celotex* standard and summary judgment should be denied on this basis alone.

17  In a landmark Ninth Circuit case developing the *Celotex* standard, the Court instructed:

18

19          At trial, a plaintiff must produce evidence in support of its claim in
            order to carry its ultimate burden of persuasion.  But at summary

20          judgment a non-moving party plaintiff has no obligation to produce
            anything until the moving party defendant has carried its initial

21          burden of production.

22  *Nissan Fire and Marine Ins. Co. Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099 (9th Cir. 2000).

23

24  Defendant ignores the controlling law that improper use by non-owner of non-defective

25  equipment, causing unseaworthy condition and causing injury renders shipowners liable.

26  (Plaintiff's Memo. p. 12).  At most, all that Cabras has shown is that PMT, while using the Cajun,

27  committed negligence.   It did nothing to negate Plaintiff's ability to prove the elements of the

28

7

1    unseaworthy claim.

2

3                    **THE MARITIME DOCTRINE OF SEAWORTHINESS**

4

5        The doctrine of seaworthiness places upon a shipowner "an absolute duty to furnish a

6    seaworthy ship." *Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539, 549, 80 S.Ct. 926, 932, 4 L.Ed.2d

7    941 (1960); *Petterson v. Alaska S.S. Co., Inc.*, 205 F.2d 478 (9th Cir. 1953) aff'md in *Alaska S.S.*

8    *Co., v. Petterson*, 347 U.S. 396, 74 S.Ct. 601, 98 L.Ed. 798 (1954)(*per curiam*).    This duty

9    requires a shipowner to provide seamen with a vessel that is reasonably fit for its intended

10   purpose. *Usner v. Luckenbach Overseas Corp.*, 400 U.S. 494, 499, 91 S.Ct. 514, 518, 27 L.Ed.2d

11   562 (1971).    The doctrine imposes this duty solely upon the vessel's owner, regardless of his

12   fault, because the owner is, by far, the person best suited to either prevent unseaworthy conditions

13   or distribute the loss incurred from such conditions which were not prevented. *Seas Shipping Co.*

14   *v. Sieracki,* 328 U.S. 85, 93-94, 66 S.Ct. 872, 877, 90 L.Ed. 1099 (1946)(Overruled on other

15   grounds by statute).

16

17       The scope of the doctrine of seaworthiness is broad and not only encompasses a physical

18   defect in a vessel itself, but "might arise from any number of circumstances."    *Usner v.*

19   *Luckenbach Overseas Corp.*, 400 U.S. at 499.   Some examples of circumstances which, if found

20   on a vessel, may give rise to a condition of unseaworthiness are, among many others,: "[h]er gear

21   might be defective, her appurtenances in disrepair, her crew unfit.   The number of men assigned

22   to perform a shipboard task might be insufficient.   The method of loading her cargo, or the

23   manner of its stowage, might be improper."   *Id.*;   *See also Gutierrez v. Waterman Steamship*

24   *Corp.*, 373 U.S. 206, 213, 83 S.Ct. 1185, 1190, 10 L.Ed.2d 297(1963)("the seaworthiness

25   doctrine, . . . is in essence that things about a ship, whether the hull, the decks, the machinery, the

26   tools furnished, the stowage, or the cargo containers, must be reasonably fit for the purpose for

27

28

1   which that are to be used.").

2          The duty imposed by the doctrine of seaworthiness is completely independent of any

3   concepts of negligence liability, even when the unseaworthy condition is temporary, because the

4   pertinent case law has evolved into the "complete divorcement of unseaworthiness liability from

5   concepts of negligence." *Mitchell v. Trawler Racer, Inc.*, 362 U.S. at 550.  Negligence plays no

6   part whatsoever in the determination of whether a vessel is unseaworthy because

7   "unseaworthiness is a condition, and how that condition came into being - whether by negligence

8   or otherwise - is quite irrelevant to the owner's liability for personal injuries resulting from it."

9   *Usner v. Luckenbach Overseas Corp.*, 400 U.S. at 498.

10

11  In other words, the shipowner's duty

12                  'is essentially a species of liability without fault, analogous
13                  to other well known instances in our law.  Derived from
                    and shaped to meet the hazards which performing the
14                  service imposes, the liability is neither limited by
                    conceptions of negligence nor contractual in character.  It is
15                  a form of absolute duty owing to all within the range of its
                    humanitarian policy.'
16

17  *Mitchell v. Trawler Racer, Inc.*, 362 U.S. at 549, *quoting Seas Shipping Co. v. Sieracki*, 328 U.S.

18  85, 94-95, 66 S.Ct. 872, 877, 90 L.Ed. 1099 328(1946)(*Sieracki* was overruled on other grounds

19  by statutory amendment).  Accordingly, the duty imposed upon the shipowner by the doctrine of

20  seaworthiness applies regardless of any exercise of reasonable care, negligence, prior notice of

21  the unseaworthy condition or the existence of any opportunity to correct it.  *Mitchell v. Trawler*

22  *Racer, Inc.*, at 549-550;  *Usner v. Luckenbach Overseas Corp.*, 400 U.S. at 498-499.  This duty is

23  nondelegable.  *Seas Shipping Co. v. Sieracki*, 328 U.S. at 94;  *Knight v. Alaska Trawl Fisheries,*

24  *Inc.*, 154 F.3d 1042, 1043 (9th Cir. 1998)("Under the seaworthiness doctrine, a shipowner is

25  strictly liable for breach of its absolute, nondelegable duty to provide a seaworthy ship").

26

27

28

**EVEN WITHOUT FOLLOWING THE CELOTEX PROCEDURE DEFENDANT HAS FAILED TO SHOW THE ABSENCE OF FACTUAL ISSUES**

A.    THE CAJUN WAS UNSEAWORTHY BECAUSE IT WAS NOT REASONABLY FIT TO SERVE AS A DIVE PLATFORM.

Defendant argues that the admission that the proximate cause of Barrineau's accident was "Mr. Collard intentionally turning off an air supply valve, which directly controlled plaintiff's own source of air while he was under water" negates Cabras Marine's liability. (Deft's Memo. p.9). This is incorrect because it fails to take into consideration the condition of the vessel and what effect the condition had on the divers ability to safely accomplish the ship's mission.

Furthermore, defendant formulates the test for an seaworthy vessel as "whether the vessel's crew and appurtenances and operation are reasonably fit for the vessel's intended purpose". (Deft's Memo. p.8). It then defines the purpose (mission) as "transporting PMT employees from the dock to the dive site and back". (Deft's Memo. p. 8).

Cabras's definition is, however, contradicted by deposition testimony elicited by its own attorney in attempting to define the mission and the equipment used to accomplish it.

> A    Again, the way that I interpreted the question was that mission was to scrub the hull. But the mission also encompassed the use of a platform to work off of. The Cajun acted as that platform, which was a part of that particular mission.

(Collard deposition p. 21:11-16)

Cabras obviously fails in its attempt to prove that the Cajun's mission was solely to transport men and equipment. Collard's testimony conclusively shows that the purpose or mission of the Cajun included providing a platform for the divers and their equipment. Further testimony shows that there is a fact question as to whether the Cajun was reasonably fit for that purpose.

A     Now, the deck, the Cajun is very, very --- the deck of the Cajun is very very small, very tight. So we had umbilical hoses diver's umbilicals, we had hydraulic hoses and it was very, very congested. So, I would imagine that the mistake was made because somebody crossed one end, one umbilical over the top of another one and the assumption was made that that's the one they should be hooking up to.

(Collard deposition p. 18:14-23).

Collard is saying that there were hoses all over the deck and because of the congestion a mistake was made in hooking a hose up to the proper receptacle. This is confirmed by Cabras's attorney who at the deposition of the plaintiff, paraphrased him as follows:

Q     Okay. And your answer to my previous question when you said, all one would have to do is follow the umbilical that goes to the man in the water, and follow the one that goes to the dive suit or equipment that's on the deck, then one would know not to shut-off the valve that controls the hose going into the water.

A     Correct.

Q     Okay. From your answer, what I gather is that, the second hose was not leading to a diver in the water, but rather it terminated on the deck of the boat. Is that what you mean by your explanation?

A     Correct.

(Barrineau deposition p. 14:23-15:10).

Therefore, far from negating plaintiff's ability to prove its case, Cabras has elicited testimony showing clearly that a jury could reasonably believe that the Cajun was not reasonably fit for its purpose by reason of the congestion on the deck and that this condition caused a mistake in connecting certain hoses which directly led to the plaintiff's air being cut of and his subsequent injuries.

In *Ribitzki v. Canmar, Reading & Bates*, 111 F.3d 658 (9th Cir. 1997), the plaintiff, as in this case, not an employee of the owner of the vessel, was injured and made an unseaworthiness claim. In reversing summary judgment, the court held that Ribitzki presented evidence, which showed the place where the accident occurred to be cramped and slippery and that:

11

1

2
> The question whether it was unreasonably unsafe for its intended use and therefore unseaworthy, is a question of fact for the jury.

3

*Id.* p. 665.

4

5
Likewise, the court found that the issue of whether unseaworthiness was a proximate

6
cause of an accident is a question of fact and that a reasonable jury could find that the accident

7
occurred because of the cramped conditions on the vessel. *Id.* p. 665.

8
Similarly, as we have seen from testimony in this case elicited by Cabras Marine's own

9
attorney, a reasonable jury could find that what caused this accident was congestion on the deck,

10
which resulted in a hose being connected to the wrong receptacle.

11
In another similar case, *Blassingill v. Waterman S.S. Corp.*, 336 F2d 367 (9th Cir. 1964),

12

13
the owner of the vessel attempted to avoid liability by claiming that all of its gear was proper but

14
that the stevedoring company had used it improperly.  In rejecting this claim, the court said:

15

16
> It is now well established that it is no defense to the shipowner that the stevedore, rather than the shipowner, brought about the condition of unseaworthiness. (*See Alaska S.S. Co. v. Petterson*, 1954, 347 U. S. 396, 74 S. Ct. 601, 98 L.Ed. 798, affirming *percuriam* the decision of this court in *Petterson v. Alaska S.S. Co.*, 9th Cir., 1953, 205 F.2d 478). That case involved defective equipment brought on board by the stevedore. But we can see no difference between such a case and the improper use by the stevedore of nondefective equipment, whether that of the ship or that of the stevedore. In either case there is a dangerous condition, and the shipowner is liable. The liability is absolute and nondelegable.

17

18

19

20

21

22
*(Id.* 371).

23

24
B.    THE CAJUN WAS UNSEAWORTHY BECAUSE THE DIVE EQUIPMENT WAS DEFECTIVE.

25

26
Cabras Marine loaded PMT's equipment onto the Cajun using Cabras' crane. Collard Depo at

27
42-43, 57, and 59, lines 15-23, 87, lines 2-5.   The equipment that Cabras Marine loaded onto the

28

12

1   Cajun included a volume tank. Collard Depo at 27. The volume tank holds about 30 gallons of

2   air. *Id*. Two quarter turn valves are attached to this volume tank and, in turn, the umbilical hoses,

3   which supply air to the divers' masks, are hooked up to these quarter turn valves. *Id*. Thus, these

4   two quarter turn valves supplied air to the divers – one diver being Mr. Barrineau. Collard Depo

5   at 51 – 52, lines 24-25 and 1-10.

6

7       The United States Navy publishes the United States Navy Diving Manual ("the Navy

8   Diving Manual"). Mr. Collard is familiar with the Navy Diving Manual and its regulations carry

9   substantial weight in the commercial diving industry. *Id*. at 50, lines 11-24 and 70, lines 4-24.

10  Mr. Collard was aware is aware of the Navy Diving Manual's requirement that all air valves that

11  supply air to a diver must be labeled. *Id*. at 50-51, lines 25-4. When Mr. Collard was asked what

12  the regulation said, Mr. Collard stated:

13

14      A       Each valve has to have a tag off of it that would prevent the
                accidental closure of it and it said that 'This is diver's air,
15              do not close unless approved by the diving supervisor.'

16      Q       So, there would be actual language that says 'Diver's air.
                Do not close'?

17      A       That's correct.

18      Q       Okay. And then there's a second element to that. There's a
                physical restraint on the valve itself, is that right?
19
20      A       That correct.

21  Collard Depo. at 51, lines 11-23.

22  Despite the Navy Diving Manual requirements of specific labeling of air valves which directly

23  influence a diver's air supply, and the placing of a physical restraint on the valve itself, Mr.

24  Collard admitted that neither of the two valves were labeled or restrained pursuant to the Navy

25  Diving Manual regulations. Collard Depo at 52, lines 11-13, 14-17 and 53, lines 5-6. Mr.

26  Collard also admitted that had the valve been physically restrained according to the Navy Diving

27

28

1   Manual regulation, the restraint would have prevented him from turning off Mr. Barrineau's air

2   supply. *Id.* at 70, line 25 and 71, lines 1-3.

3   Thus, the equipment that was brought onto the boat was defective in such that the air supply

4   valves were neither properly labeled nor physically retrained so that they could not, or would not,

5   be turned off.  The lack of labeling and physical restraint of the valve was in violation of an

6   industry custom, made the equipment dangerous and unsafe and the Cajun unseaworthy.

7

8   Cabras Marine claims that it is not liable to Mr. Barrineau because it "did not exercise any control

9   or right of control over any equipment [or] instrumentality which caused Mr. Barrineau harm."

10  Deft's Memo at 2.  However, equipment brought on board a vessel by a third party may cause

11  that vessel to be unseaworthy, even if that equipment is owned by the third party. *Petterson v.*

12  *Alaska S.S. Co.*, 205 F.2d 478, 479, (9th Cir. 1953) aff'md in *Alaska S.S. Co., v. Petterson*, 347

13  U.S. 396, 74 S.Ct. 601, 98 L.Ed. 798 (1954)(*per curiam*);

14

15      In the oft-cited Ninth Circuit case of *Petterson v. Alaska S.S. Co.*, 205 F.2d at 479, the question

16  presented to the Ninth Circuit was:

17          whether a vessel's owner is liable for injuries received by
            an employee of a stevedoring company (an independent
18          contractor) on board a ship while engaged in the loading of
            the ship where the injuries are cause by a breaking block
19          brought on board by the stevedoring company.

20  *Id.* at 478 (parentheticals in original).

21      In the *Petterson* case, a block, used in loading a ship, broke and injured the plaintiff. *Id.* at

22  479.  There was no evidence of the block's condition prior to the accident.   Nor was there any

23  evidence that the block was improperly used or was defective.  *Id.*  The lower court rendered

24  judgment for the vessel owner "on the ground that it was not shown the block belonged to or was

25

26  a part of the gear of the Susitna [the owner's vessel]."  *Id.*  The plaintiff appealed, arguing that the

27  block made the vessel unseaworthy and thus liability should be imposed even if the gear belonged

28

                                        14

1  to the independent contractor. The *Petterson* Court overturned the lower court's ruling that the

2  ship was seaworthy, found the block was unseaworthy *as a matter of law* and remanded the case

3  back down for a determination of damages. *Id.* at 479 - 480. The United States Supreme Court

4  granted certiorari and affirmed the Ninth Circuit's judgment in a per curiam decision. See *Alaska*

5  *S.S. Co., v. Petterson*, 347 U.S. 396, 74 S.Ct. 601, 98 L.Ed. 798 (1954)(*per curiam*).

6

7       In *Foster v. Destin Trading Corp*, 700 So.2d 199 (La. 1997)(Order Clarifying Decision on

8  Grant of Rehearing) the Louisiana Supreme Court reiterated the above *Petterson* logic in a case

9  alleging a breach of the warranty of seaworthiness. The *Foster* Court explained the "[a] ship's

10  equipment and appurtenances include most objects and things on or attached to the vessel

11  regardless of whether the item belongs to the ship or is brought aboard by a party. Additionally,

12  the Louisiana Supreme Court stated that "[s]ince the owner's duty to maintain a seaworthy vessel

13  is absolute and nondelegable, it extends even to conditions of unseaworthiness created by third

14  parties without any knowledge on part of the owner. *Foster v. Destin Trading Corp*, 700 So.2d at

15  209 n.5, *citing Blassingil v. Waterman S.S. Corp.*, 336 F.2d 367, 370 (9th Cir. 1964).

16

17       Cabras also claims that Mr. Barrineau is precluded from asserting liability under the

18  doctrine of unseaworthiness because his injury was caused by an "isolated, personal negligent

19  acts of negligence." Deft's Memo at 9. However, as discussed above, the isolated personal

20  negligence of Mr. Collard turning off the air supply valve was caused by a defective and

21  dangerous condition of the Cajun's equipment - the unlabeled and unrestrained air valves. The

22  Ninth Circuit has affirmatively recognized that unseaworthiness can be found in circumstances

23  "in which negligent operation of equipment [is activated] by a latent but dangerous condition to

24  produce [an] injury. *Griffin v. United States*, 469 F.2d 671, 672 (9th Cir. 1972);    *See also*

25  *Grigsby v. Coastal Marine Service of Texas, Inc.*, 412 F.2d 1011(5th Cir. 1969)(Contractor failed

26  to take steps to make a wing tank on a barge reasonably safe – "To this extent it was the action of

27

28

the contractor which created the unseaworthy condition. But at least since *Alaska S.S. Co., v. Petterson*, 347 U.S. 396 [] this has been enough").

In the *Griffin* case, the Ninth Circuit found that a vessel was made unseaworthy when an object, which was left near the top of a ladder, was knocked off by a workman properly using the ladder. *Id.* The object hit the plaintiff and injured his eye. *Id.* at 671. In ruling that the object created a dangerous condition on the vessel, thus making the vessel unseaworthy, the Ninth Circuit stated that the "district court erred in holding that the falling object must be part of the ship's equipment before the unseaworthiness may be found. *Id.* at 672.

Accordingly, Mr. Barrineau has shown that the equipment on board the Cajun was in a dangerous and defective condition and that condition caused his injury. Mr. Barrineau has further shown that it matters not that Mr. Collard's subsequent negligence exposed the unseaworthy condition of the vessel. Cabras Marine's motion for summary judgment regarding unseaworthiness should be denied.

C.    CABRAS MARINE FAILS TO SHOW THAT IT IS NOT LAIBLE FOR NEGLIGENCE.

Cabras Marine claims that Plaintiff can not show that Cabras Marine was negligent because Mr. Barrineau cannot show that Cabra Marines acts or omissions played a substantial part in bringing about the injury. Deft's Memo at 12. This is Cabras Marine's only point of contention. However, it is settled law that whether a vessel is, or is not, seaworthy, is ordinarily a question of fact for the trier of the facts to determine. *Morales v. City of Galveston, 291 F.2d 97, 98 (5th Cir. 1961)*, aff'd, 370 U.S. 165, 82 S.Ct. 1226, 8 L.Ed.2d 412 (1962). More importantly, the Ninth Circuit has held that "summary judgment is rarely granted in negligence cases." *Martinez v. Korea Shipping Corp., Ltd.*, 903 F.2d 606, 609 (9th Cir. 1990). In *Martinez*, the district court granted summary judgment against plaintiff who sued a vessel owner for , among

1   other causes, negligence. *Id.* at 608-609.  In overturning the district court's decision, the Ninth

2   Circuit stated that:

3
> It is sometimes said that the determination of negligence is
> a mixed question of law and fact.  The existence and extent
4   > of a duty of care are questions of law, but proximate cause
> and whether such a duty has been breached are questions of
5   > fact.

6   *Id.* at 609.        Here, the fact that Cabras Marine, as an owner of a vessel in navigable waters,

7   "owes to all who are on board for purposes not inimical to his legitimate interests the duty of

8   exercising reasonable care under the circumstances of each case."  *Kermarec v. Compagnie*

9   *Generale Transatlantique*, 358 U.S. 625, 632, 79 S.Ct. 406, 410, 3 L.Ed. 2d 550 (1959).  Here,

10  Cabras helped load the Cajun and drove it out to the Hauge.  Cabras had a duty to ensure that the

11  vessel was safe.  This includes ensuring that it was not too cramped or overcrowded as discussed

12  above.  Mr. Barrineau shown that Cabras Marine owes him a duty and has shown a basis for the

13  breach of that duty.  However, the only important showing that Mr. Barrineau needs to make

14  relevant to Defendant's Motion for Summary Judgment is that the cramped condition was a

15  substantial cause of Mr. Barrineau's injury.  See discussion *supra*.  Mr. Collard has stated that the

16  hoses were switched was because the Cajun's deck was very cramped.  Thus, it is for the jury to

17  decide if the cramped condition of the deck of the Cajun was a substantial cause of Mr.

18  Barrineau's injury.

19

20

21

22

23

24

25

26

27

28

1

### CONCLUSION

2

3      Defendant has failed to follow the *Celotex* procedure, has failed to comply with LR 56.1,

and has failed to show that there are no disputed issues of fact.    It's motion for summary judgment

4

should, therefore, be denied.

5

6      RESPECTFULLY SUBMITTED on this 30th day of April, 2007.

7

8

9                                            WILLIAM M. FITZGERALD

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28