CARLSMITH BALL LLP

DAVID LEDGER (CNMI BAR NO. F0195)
Carlsmith Ball LLP Building, Capitol Hill
Post Office Box 5241
Saipan, MP 96950-5241
Tel No. 670.322.3455

Attorneys for Defendant
Cabras Marine Corporation

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN MARIANA ISLANDS

| | |
|---|---|
| JOHN BRADY BARRINEAU,<br><br>         Plaintiff,<br><br>    vs.<br><br>PROMARINE TECHNOLOGY and<br>CABRAS MARINE CORPORATION,<br><br>         Defendants. | CIVIL ACTION NO. CV05-0028<br><br>DEFENDANT CABRAS MARINE CORPORATION'S REPLY MEMORANDUM TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DECLARATION OF KEN COLLARD; CERTIFICATE OF SERVICE<br><br>HEARING DATE: MAY 10, 2007<br>TIME: 9:00 A.M. |

**DEFENDANT CABRAS MARINE CORPORATION'S REPLY
MEMORANDUM TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S
<u>MOTION FOR SUMMARY JUDGMENT</u>**

I.   **<u>INTRODUCTION</u>**

Plaintiff John Barrineau attempts to avoid summary judgment by understandably ignoring the clear and undisputed evidence that ProMarine Technology ("PMT") is 100% at fault for any injuries he sustained while he was performing commercial dive work for PMT. Barrineau does not dispute three genuine, critical facts: (1) PMT and only PMT selected to utilize Defendant

4819-0924-8513.1.052540-00009

Cabras Marine Corporation's ("Cabras") vessel, the Cajun, in spite of PMT's concerns that the onboard workspace might be cramped; (2) Cabras' only responsibility was to provide water taxi services; and (3) Plaintiff's injuries are due to PMT President Ken Collard's admitted mistake of turning off an air supply valve connected to Plaintiff, in which Cabras likewise admittedly had no role. Furthermore, Plaintiff also does not dispute that he admitted in his deposition that he previously acknowledged that his injuries were the result of Mr. Collard's mismatching of color-coded air supply umbilical cords and valves. Ignoring all of this evidence as if it were insignificant or non-existent, Barrineau distracts the Court by asserting that the Cajun's work deck caused his injuries.

However, the assertion that PMT employees knowingly and voluntarily worked in what Mr. Collard characterized as somewhat cramped quarters does nothing to defeat Cabras' motion for summary judgment. On the issue of seaworthiness, it is well-settled that unseaworthiness is caused by a pervasive condition of the vessel, and not isolated, personal, negligent acts. Here, the incident is not due to pervasive conditions of the Cajun (indeed no condition of the Cajun), but rather only an isolated negligent act committed by PMT's President, Ken Collard. Cabras, having only been a water taxi service, neither created any unseaworthy condition nor committed any pervasive, unseaworthy act. To the contrary, Cabras fulfilled its sole obligation of providing safe water taxi transportation service, as it is undisputed that the Cajun well-performed this service. Not one person, not Plaintiff nor PMT's Mr. Collard, faults Cabras Marine for any unsafe condition or negligent act or omission with regard to providing water transportation to and from the dive site. In fact, that is all PMT expected and permitted Cabras to do.

On the issue of negligence, Plaintiff had an obligation to prove that the Cajun's work deck played a substantial role in causing his injuries. Again, Plaintiff fails to set forth any genuine issue of material fact showing that Cabras committed any negligence. What's more, even

if working quarters packed full with PMT's gear played any role in causing the injury, that event (or negligence) was the sole responsibility of PMT, as it was PMT not Cabras which provided its employees with the working area on the back of the Cajun. PMT hired the Cajun on a daily rental for water transportation to and from the dive site, at which location PMT, not Cabras, provided PMT divers with a dive platform situated on the work deck area of the Cajun. Cabras' only mission was to provide water transportation, and in fact its employees were not even permitted to enter the work area during dive operations.

Finally, Plaintiff offers no arguments in response to Cabras' motion with respect to the maintenance and cure, negligence per se, and negligence res ipsa loquitur claims.

Summary judgment on all grounds is therefore appropriate.

## II. DISCUSSION

### A. UNDISPUTED FACTUAL ISSUES

Plaintiff states that Cabras has given an "accurate description of the events surrounding the accident." In other words, the parties agree that Ken Collard turned off the wrong valve thus cutting of Plaintiff's air supply. Opp. at 2.

Plaintiff does not dispute that PMT selected to use the Cajun, a fact yet again reinforced in the attached declaration of Ken Collard. Collard Decl., ¶¶ 4, 5. Plaintiff also does not dispute that Cabras employees had no role in PMT's selection of the Cajun, the use or handling of PMT's dive equipment, or in instructing PMT what to do. Collard Decl., ¶¶ 4-7. All such decisions were made solely by PMT. *Id.* Cabras' only involvement was to provide the services of a water taxi. Collard Decl., ¶ 4. Said another way, the sole mission of the Cajun was to transport PMT employees and their dive gear to and from the dive site in Apra Harbor. It is undisputed that the Cajun completed this mission without incident. Therefore, for Cabras Marine and the Cajun, this is where the story ends.

B.   SUMMARY JUDGMENT STANDARD

As noted in Cabras' Motion, Federal Rule of Civil Procedure 56 allows summary judgment if the pleadings, depositions, and interrogatories, together with affidavits on file show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). If a party opposing summary judgment has the burden of persuasion at trial, summary judgment is appropriate if the opposing party **lacks sufficient evidence to carry its ultimate burden of persuasion at trial**; i.e., it does not have evidence from which a jury could find an essential element of the opposing party's claim or defense. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (summary judgment will not lie if the evidence is such that a reasonable jury could not return a verdict for the nonmoving party). "A complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323. In light of the admissions and undisputed facts, it is difficult to imagine a case more fitting than this one for summary judgment under these standards.

C.   PLAINTIFF FAILS TO OFFER GENUINE ISSUES OF MATERIAL FACT REGARDING UNSEAWORTHINESS.

Plaintiff understandably misses Cabras' argument that isolated and personal negligent acts do not constitute unseaworthiness, and instead misinforms the Court that "the isolated personal negligence of Mr. Collard turning off Plaintiff's air supply was caused by a defective and dangerous condition of the *Cajun's equipment* – the unlabeled and unrestrained air valves." Opp. at 15 (emphasis added). However, as clearly set forth in Ken Collard's deposition and in the attached declaration, **the air valves were owned, maintained, and operated by PMT, and did not belong to Cabras.** *See* Mot. For Summary Judgment ("Mot."), Ex. B at 21:19-21 (PMT owned all the equipment necessary for the underwater mission of the cleaning of the hull, except for the Cajun); Collard Decl., ¶ 7. Plaintiff's disingenuous and desperate contention that Cabras

owned any of the equipment used during the diving work, and in particular the valve Mr. Collard turned off, is a misstatement intended to mislead the Court.

Plaintiff presents no genuine issue of material fact showing that a condition of unseaworthiness existed. As explained in Cabras' Motion, an isolated, personal negligent act does not render a vessel unseaworthy. *See Usner v. Luckenbach Overseas Corp.*, 400 U.S. 494 (1971); *Shephard v. S/S Nopal Progress*, 497 F.2d 963, 967 (5th Cir. 1974) (well-settled that the isolated, personal negligent act of a co-worker does not render a vessel unseaworthy); *Mitola v. Johns Hopkins Univ. Applied Physics Lab.*, 839 F. Supp. 351, 357 (D. Md. 1993). Furthermore, in the incident now before the Court, it is not even an isolated or personal negligent act of vessel owner Cabras at issue, but rather an isolated negligent act of PMT's Mr. Collard in shutting off the wrong valve. It defies logic to equate Mr. Collard's isolated mistake with an unseaworthy condition attributable to Cabras Marine. Indeed the cases which hold that an isolated personal act of negligence does not create an unseaworthy condition do so in the context of the isolated act being committed **by the vessel owner, its employees, or an agent or contractor of the owner**. Here, however, the two Cabras employees on board to pilot the Cajun were not even permitted to be in the work area during dive operations, and there was no relationship between Cabras and PMT beyond PMT paying a daily rate for water taxi service.

Plaintiff unabashedly attempts to persuade the Court that Cabras could be liable for any accident aboard the Cajun. However, "while the duty [of seaworthiness] is absolute, it is a duty only to furnish a vessel and appliances reasonably fit for their intended use . . . and the shipowner's warranty of seaworthiness does not extend to a negligent use . . . of seaworthy appliances." *Billeci v. United States*, 298 F.2d 703, 706 (9th Cir. 1962).

These criteria are not only easily met here, they are admitted. First, there is no issue that the Cajun was reasonably fit to transport PMT employees and gear to and from the dive site.

This alone was the Cajun's mission, which it and its crew of two well-completed. Second, there is no question and no issue for the trier of fact that the one and only cause of Plaintiff's loss of air was Ken Collard's personally turning off the wrong air supply valve. Not only is this a personal, isolated, negligent act, and not an unseaworthy condition, ***it is an act not of Cabras but of PMT's Mr. Collard.*** Plaintiff desperately tries to use the issue of cramped working quarters to fabricate a genuine issue of material fact. However, Mr. Collard's selection of the Cajun with his pre-existing knowledge that its size was not as ideal as a larger vessel he had in mind for the job, as a decision of PMT's, does not in any way shape or form render Cabras liable for any unseaworthiness. Arguments similar to Plaintiff's have been made and failed. For example, in *Shephard*, 497 F.2d at 964-65, a longshoreman contended that an overcrowded [i.e., cramped] and foggy refrigerated hold was an unseaworthy and unsafe working place. The Fifth Circuit held that the crowded conditions could not be attributed to the shipowner, ***because the stevedoring company decided how many longshoremen would be in the refrigerated hold.*** *Id.* at 965 (emphasis added). Here, similarly, there is no dispute that the cause of the accident is Ken Collard's mistake in turning off the wrong air valve. Mot., Ex. B at 18:18-23 (Ken Collard's testimony that "I would imagine that the mistake was made because somebody crossed one end, one umbilical over the top of another one and the assumption was made that that's the one that they should be hooking up to.").[1] It is equally undisputed that Cabras had nothing to do with the mistake described by Mr. Collard: "Once [the Cabras employees] secured the Cajun to the side of the Hague, they went forward up into the cabin and we probably wouldn't – we did wouldn't see him for probably the rest of the day." Mot., Ex. B at 19:1-6. Cabras also had nothing to do

---

[1] Here it is worthwhile to revisit Plaintiff's own statement regarding cause. Plaintiff adamantly shirked the contention that his accident was the result of not knowing which air supply hose went to which diver or not knowing which valve to turnoff and which one to leave on. Rather, plaintiff seemingly hit the nail on the head when he said that all one would have to do is "follow the hoses" and in that manner see which one was hooked up to the diver in the water [and not turn that one off]. Plaintiff's rendition is a good one because in rather blunt terms it shows that the allegation of cramped quarters is what it is – a meaningless smokescreen intended to extract compensation from a wholly innocent party.

with the selection of the Cajun for PMT's underwater cleaning mission:

> Q: [LEDGER]  Well, whose decision was it to use the Cajun for the operation?
>
> A: [COLLARD]  Solely mine.

Mot., Ex. B at 91:22-24. In addition, PMT continued to use the Cajun in spite of feeling cramped on the work deck. Mot., Ex. B at 81:24 – 82:2, 89:16 – 90:8. 91:22 – 92:3.

As in *Shephard* where the decisions to use a congested workspace were made by the stevedore and not the vessel owner, here, the decision to use the Cajun in spite of a congested work area belonged to PMT and only PMT. Moreover, the accident is due to an acknowledged isolated mistake of turning off the incorrect air valve. It is undisputed that neither action is the fault of Cabras.

*Grigsby v. Coastal Marine Serv. of Tex., Inc.*, 412 F.2d 1011 (5th Cir. 1969), cited by Plaintiff, only supports Cabras' position. Plaintiff cites *Grigsby* for the proposition that a shipowner cannot be absolved from the duty of unseaworthiness because the unseaworthy conduct is brought upon by a contractor, a principle not disputed by Cabras. Even so, *Grigsby's* reasoning with regard to unseaworthiness imputed to the vessel owner as a result of service contractor negligence has no application here, because that reasoning only applies where ***the contractor is performing contract work for the vessel owner and does so negligently.*** In *Grigsby,* defendant Costal Marine Services, under its service contract with defendant vessel owner Aiple Towing, was to service Aiple's barges including the one which caused Mr. Grigsby's death. *Id.* at 1016. Mr. Grigsby had entered a sealed tank and was overcome by fumes present, but which should have been removed by Coastal Marine per its service contract with vessel owner Aiple. In these circumstances finding unseaworthiness on the part of Aiple, the Court explained that "[e]ven though the tank was not meant to be safe for persons, once it became necessary to enter it, the service contractor had the obligation not to perform its work in

a way which would make the vessel unseaworthy, i.e., unfit for men." *Id.* at 1031-32. Here, however, PMT was not a "contractor" of Cabras within the meaning of *Grigsby* (nor in any other context) and accordingly *Grigsby's* reasoning finding vessel unseaworthiness attributable to the vessel owner on account of its contractor's error does not apply to Cabras.

In addition, this Court should take from *Grigsby* that court's adherence to the principle that isolated, personal negligence acts do not constitute unseaworthiness. On this point, *Grigsby* defers to two other Fifth Circuit cases: *Antoine v. Lake Charles Stevedores, Inc.*, 376 F.2d 443, 446-47 (5th Cir. 1967), which holds that that "the operational negligence of the employee of an independent contractor, occurring at the moment of injury to a co-worker, does not render the vessel unseaworthy." That is the case here, in which there is momentary negligence committed by PMT - with the distinction that PMT was not an independent contractor to Cabras. *Grigsby* also relies on *Robichaux v. Kerr McGee Oil Indus. Inc.*, 376 F.2d 447, 449 (5th Cir. 1967), which holds that "appellant's co-workers were negligent in the use of seaworthy equipment, and that appellant was injured after the negligence took place, rather than at the time of the negligent act, the vessel would, under the law, be considered unseaworthy, . . .; otherwise not."

The Ninth Circuit likewise adheres to the principle that instantaneous acts do not lead to unseaworthiness: "This court is not convinced that the instantaneous acts of a fellow longshoreman rendering the equipment and injury to longshoremen are chargeable to the ship as unseaworthiness." *Titus v. The Santorini*, 258 F.2d 352, 354 (9th Cir. 1958). Here, again, the injury occurred instantaneously through PMT's improper use of its own dive equipment which was otherwise fit for its intended purpose. That negligent act was not over an extended period of time but rather caused the injury at the instant Mr. Collard cut off Plaintiff's air supply. Under the circumstances and applicable law, there can be no unseaworthiness on behalf of Cabras.

*Blassingill v. Waterman Steamship Corp.*, 336 F.2d 367 (9th Cir. 1964), cited by Plaintiff, is also distinguishable and of no help. In that case, **using the vessel's gear**, the stevedores adopted an unsafe method of hosting bales of burlap using the ship's gear. The court ruled that the owner could not escape liability for unseaworthiness, however, it distinguished the instance in which "the only danger was brought about by [the plaintiff] or his fellow longshoremen in not properly placing the bales in the particular slingload that injured him." *Id.* at 370. Because instead the condition was created by this shipowner, "the jury could have found that there was adopted by the stevedore a course of conduct that made the ship dangerous." *Id.* In this case, the danger was brought about by PMT by (1) PMT and only PMT selecting and providing the Cajun to its divers as a dive platform, and (2) Ken Collard mistakenly turning off the air valve supplying the plaintiff's air. There was no "course of conduct" that made the Cajun unseaworthy; rather, PMT's one-time conduct and mistake caused Plaintiff's air to be shut off. Indeed, once at the dive site Cabras employees were not permitted to enter the area of the Cajun where PMT was working, and instead simply remained in the forward wheel house well away from dive operations on the stern deck. This undisputed evidence negates any so-called issue of fact regarding unseaworthy conditions committed by Cabras.

Plaintiff also cites *Petterson v. Alaska S.S. Co.*, 205 F.2d 408 (9th Cir. 1953). *Petterson* is readily distinguishable because it proceeds on the assumption that a tackle block used by a stevedore was "being put to proper use in a proper manner." *Id.* at 479. In this case, PMT's air supply valves, one of which was connected to Plaintiff, was not being used properly, but rather was mistakenly turned off and instantaneously caused Plaintiff harm.[2] Again, unseaworthiness is a duty to provide equipment fit for its intended purpose. Even assuming that Cabras "provided"

---

[2] It is worthwhile noting that *Petterson* and other cases cited by Plaintiff could only help Plaintiff if the equipment that failed or otherwise caused the harm was owned by the vessel owner. This perhaps explains Plaintiff's blatantly misleading contention that Cabras not PMT owned the air valves. It is an admitted fact that each and every item of dive gear including the valves was owned, maintained, and operated by PMT.

any equipment, which it admittedly did not, it is PMT's improper use of equipment for its proper purpose which absolves Cabras from any claim for unseaworthiness.

Finally, *Ribitzki v. Canmar Reading & Bates, Ltd.*, 111 F.3d 658, 664 (9th Cir. 1997), cited by Plaintiff, is distinguishable because the injury was not attributable to a negligent, isolated mistake, but rather possibly due to a cramped workspace found to be a permanent working condition ***imposed by the owner***. Here, the accident at issue falls within the category being caused by isolated, negligent acts, as opposed to conditions of the vessel. Furthermore, as has been repeated above and in the opening brief, vessel owner Cabras Marine imposed no "cramped condition" on PMT. Mr. Collard has admitted that he could not obtain the vessel he had in mind for the project, and that as result he selected the smaller Cajun to provide a dive platform for PMT employees. It is worth repeating one more time:

> Q: [LEDGER]  Well, whose decision was it to use the Cajun for the operation?
>
> A: [COLLARD]  Solely mine.

Mot., Ex. B at 91:22-24. In addition, PMT continued to use the Cajun in spite of feeling cramped on the work deck. Mot., Ex. B at 81:24 – 82:2, 89:16 – 90:8. 91:22 – 92:3.

D.   **PLAINTIFF FAILS TO OFFER GENUINE ISSUES OF MATERIAL FACT PROVING NEGLIGENCE.**

The only so-called issue presented by Plaintiff in support of his negligence claim is whether the cramped working quarters caused his injury. First, for the reasons enumerated above, even if that were true, PMT had sole control over the selection of the Cajun as a dive platform for its employees. If the dive platform proved to be not roomy enough for PMT's purposes, then PMT must answer in negligence. Second, there is no issue of fact that Plaintiff's injury was caused by any reason other than PMT mistakenly shutting off Plaintiff's air supply. Both PMT and Plaintiff acknowledge that the sole cause of the incident was PMT's failure to

determine which hose was connected to Plaintiff. As explained in the Motion, PMT acknowledges it throughout discovery responses, and Mr. Collard's deposition testimony. Plaintiff acknowledges it in his deposition where he verifies that *"all one would have to do is follow the umbilical that goes to the man in the water, and follow the one that goes to the dive suit or equipment that's on the deck."* Mot., Ex. C at 14:24 – 15:5. It is therefore undisputed that the work area was not a substantial factor in bringing about Plaintiff's injuries because the acknowledged, undisputed cause is PMT shutting off the wrong valve - the one that went "to the man in the water ….." There is simply no issue for the trier of fact to determine.

*Martinez v. Korea Shipping Co., Ltd.*, 903 F.2d 606 (9th Cir. 1990), cited by Plaintiff, does not apply as it relates to duties of vessel owners owed to longshoremen.

E.  PLAINTIFF FAILS TO OFFER GENUINE ISSUES OF MATERIAL FACT PROVING NEGLIGENCE PER SE.

Plaintiff offers no arguments in response to Cabras' arguments in support of summary judgment on Plaintiff's negligence per se claim. Summary judgment on this claim is therefore appropriate.

F.  PLAINTIFF FAILS TO OFFER GENUINE ISSUES OF MATERIAL FACT PROVING NEGLIGENCE RES IPSA LOQUITUR.

Plaintiff offers no arguments in response to Cabras' arguments in support of summary judgment on Plaintiff's negligence res ipsa loquitur claim. Summary judgment on this claim is therefore appropriate.

G.  PLAINTIFF OFFERS NO ARGUMENT IN OPPOSITION TO ARGUMENTS REGARDING MAINTENANCE AND CURE.

In its Motion, Cabras contends that the right to maintenance and cure arises only out of an employment relationship. Understandably, being employed by PMT, Plaintiff offers no argument in response. Summary Judgment on this ground is therefore appropriate.

## III. <u>CONCLUSION</u>

For the foregoing reasons, summary judgment in favor of Cabras is appropriate.

DATED: Hagåtña, Guam, May 7, 2007.

CARLSMITH BALL LLP

_____
DAVID LEDGER
Attorneys for Defendant
Cabras Marine Corporation

CARLSMITH BALL LLP

DAVID LEDGER (CNMI BAR NO. F0195)
Carlsmith Ball LLP Building, Capitol Hill
Post Office Box 5241
Saipan, MP 96950-5241
Tel No. 670.322.3455

Attorneys for Defendant
Cabras Marine Corporation

IN THE UNITED STATES DISTRICT COURT

FOR THE

COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| JOHN BRADY BARRINEAU,<br><br>       Plaintiff,<br><br>vs.<br><br>PROMARINE TECHNOLOGY and<br>CABRAS MARINE CORPORATION,<br><br>       Defendants. | CIVIL ACTION NO. CV05-0028<br><br>**DECLARATION OF KEN COLLARD** |

I, Ken Collard, pursuant to 28 U.S.C. Section 1746, declare under penalty of perjury that the following statements are true and correct:

1.   I have personal knowledge of the facts stated in this declaration.

2.   I would testify as to these facts if called by the Court.

3.   I am the President of Pro Marine Technology ("PMT").

4.   PMT had a mission to scrub the hull of the M/V Hague, which required PMT to use the services of a water taxi. On behalf of PMT, I contacted Cabras Marine Corporation to use a particular vessel which was unavailable for PMT's mission. Cabras had available for use

4828-8670-6177.1.052540-00009

1  the smaller M/V Cajun, which I selected for PMT's mission.

2      5.    Cabras exercised no influence in PMT's decision to hire or use the Cajun.

    6.    Cabras had no role in determining how the umbilical hoses were connected to the air valves during the mission. The placement of the valves and hoses were solely the responsibility, conduct, and decision of PMT.

    7.    Except for the Cajun, all dive equipment – including the hoses, umbilical cords, volume tanks, and air valves - used during the mission belonged to PMT. Cabras exercised no influence or control over which equipment was used by PMT.

DATED: May 5, 2007.

_____
KEN COLLARD

**CERTIFICATE OF SERVICE**

The undersigned hereby declares that on the 7th day of May 2007, I will cause to be served, via electronic filing/service, a true and correct copy of **DEFENDANT CABRAS MARINE CORPORATION'S REPLY MEMORANDUM TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DECLARATION OF KEN COLLARD; CERTIFICATE OF SERVICE** upon the following Counsel of record.

> William M. Fitzgerald, Esq.
> Law Office of William M. Fitzgerald
> 1st Floor, Macaranas Building
> Post Office Box 909
> Saipan, MP 96950

and

> Bruce Berline, Esq.
> Law Office of Bruce Berline
> 1st Floor, Macaranas Building
> Post Office Box 5682 CHRB
> Garapan, Saipan MP 96950

DATED: May 7, 2007.

_____
DAVID LEDGER

4819-0924-8513.1.052540-00009